ATRAN, Infant, et al. *v.* FURNESS, et al.

[No. 336, September Term, 1967.]

*Decided October 18, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, McWILLIAMS, FINAN and SMITH, JJ.

*Philip O. Foard,* with whom were *George W. White, Jr.,
Samuel D. Hill,* and *Buckmaster, White, Mindel & Clarke* on
the brief, for appellants.

*Edward C. Mackie,* with whom were *Warren K. Rich* and
*Rollins, Smalkin, Weston & Andrew* on the brief, for appel-
lees.

SMITH, J., delivered the opinion of the Court.

This case arose from a collision at Westview Shopping Center
near the intersection of Route 40 and the Baltimore Beltway
in Baltimore County. Mrs. Furness was using the shopping
center as a short cut to get from a church to the north of the
shopping center through the shopping center and on to Route
40 to go home. She was heading east on the main East-West
driveway. Mrs. Atran had been shopping at Hutzler's in the
shopping center. She was parked on a North-South driveway
which ran perpendicular to the East-West driveway on which
Mrs. Furness was driving. There were no stop signs along the
East-West driveway for autos coming from intersecting lanes.
Mrs. Furness approached from the left of Mrs. Atran. The
Furness car struck the Atran car broadside on the left-hand
side just back of the front wheel.

The minor son of Mrs. Atran was a passenger. Suit was
brought for the injuries to the minor son, for the injuries to

Mrs. Atran and by Mr. Atran for the medical expenses he incurred for his wife and son, for the loss of their services and for the damage to his automobile.

The case was tried before a jury in Baltimore County. At the end of the plaintiffs' cases the trial court ruled Mrs. Atran to have been contributorily negligent as a matter of law. The negligence of Mrs. Furness was submitted to a jury which returned a verdict in her favor.

Appellant contends Mrs. Furness was a trespasser or licensee, that a trespasser or licensee is owed no more duty by a property owner than not willfully or wantonly to injure him, that an invitee on a private driveway owes no more duty to a trespasser or licensee than does the property owner and that, therefore, Mrs. Furness owed Mrs. Atran "the duty almost absolute, if not completely so, not to injure her or anyone with her."

The trial court held appellee not to have been a trespasser. We agree. *Crown Cork and Seal Co., Inc. v. Kane,* 213 Md. 152, 131 A. 2d 470 (1957) involved a suit against a property owner. Judge (later Chief Judge) Henderson there reviewed the cases distinguishing licensees and invitees. In reviewing the implied invitation theory he said for this Court:

> "* * * The cases all recognize that an invitation may be express or implied, and there are many cases in which an invitation has been implied from circumstances, such as custom, the acquiescence of the owner in habitual use, the apparent holding out of premises to a particular use by the public, or *simply in the general arrangement or design of the premises." Id.* at 159. (emphasis added)

In *Hutzler Bros. Co. v. Taylor,* 247 Md. 228, 230 A. 2d 663 (1967), another suit against a landowner, we said:

> "* * *It is urged that Mrs. Taylor came upon the property solely for the benefit and convenience of herself, without any knowledge on the part of Hutzlers and with no intention of buying anything in its store. She testified, however, that she intended to do her

grocery shopping in Towson Plaza at the Food Fair. This testimony was not contradicted; indeed, it was corroborated by Mrs. Wicks. Since Towson Plaza is a lessee of Hutzlers, the economic benefit to Hutzlers as a result of any shopping Mrs. Taylor might do is, to be sure, both remote and minimal but it is real, nonetheless. Mr. Hutzler recognized that the parking lot would be used by others when he said, 'We want to keep the parking lot *as much as possible* for Hutzler's customers.' (Emphasis supplied.) *Whether Mrs. Taylor parked in one of the spaces leased by Hutzlers to Towson Plaza or in one of the spaces retained by Hutzlers we think makes no difference, considering the physical arrangement of the area* and especially in light of the 1949 agreement. * * *" *Id.* at 237. (emphasis added)

Mrs. Taylor was held to be an invitee.

In *Austin v. Buettner,* 211 Md. 61, 124 A. 2d 793 (1956) Chief Judge Brune said:

"1. *Was the Plaintiff an Invitee or Licensee? Benson v. Baltimore Traction Co.,* 77 Md. 535, 26 A. 973, states the more or less traditional classification of those who go upon the premises of others by consent or invitation as (1) bare licensees or volunteers, (2) those who are expressly invited or induced by the active conduct of the defendant to go upon the premises, and (3) customers and others who go there on business with the occupier. Somewhat different terms are used in §§ 330-332 of the *Restatement, Torts,* which give these definitions:

"§ 330. 'A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission.'

"§ 331. 'A gratuitous licensee is any licensee other than a business visitor as defined in § 332.'

"§ 332. 'A business visitor is a person who is invited or permitted to enter or remain on land in

the possession of another for a purpose directly or indirectly connected with business dealings between them.'

"*Comment c* under § 332 states that 'It is not necessary that the visitor's purpose be to enter into immediate business dealings with the possessor. The benefit to the possessor may be indirect and in the future.' " *Id.* at 66.

When due consideration is given to the physical layout of the premises as revealed in the aerial photographs filed as exhibits in the proceeding and when due consideration is given to our earlier rulings, we conclude that Mrs. Furness was at least a licensee. Under our decision in *Feldser v. Beeman,* 176 Md. 377, 4 A. 2d 750 (1939) appellee, as a licensee, would have been obliged to use ordinary care. We had before us in that case a situation in which a taxicab used a roadway through a bus terminal. The cab struck a passenger who was alighting from a bus. Speaking through Judge Parke we there said:

"* * * It was the plain duty of the driver of the taxicab to use reasonable care and diligence in the operation of the taxicab, so as to avoid injury to any of these plainly visible passengers. On the testimony offered, the jury could have found that the collision happened because the driver had not used such reasonable care and prudence in the management and control of the taxicab, and hence had not given any warning of his approach nor stopped nor altered the course of the taxicab in time to avoid striking the plaintiff. * * *" *Id.* at 381.

There can be no question but that appellant was in the position of knowing of the presence of other vehicles on the parking lot. To hold that there would be one set of vehicles in the situation of appellant who would owe a standard of ordinary care toward each other and another set of vehicles on the parking lot in the status of appellee who would owe a standard of care above and beyond ordinary care would create a chaotic situation.

The trial court held the care owed by appellant to appellee in this instance "would be the care of an ordinary, prudent person, driving under similar circumstances and at the time that this particular accident took place." We agree.

The trial court instructed the jury:

> "I have used the word 'negligence.' Negligence means the lack of ordinary care. Ordinary care is, in legal terms, that degree of care and caution, attention or activity which is habitually employed by or should reasonably be expected of a reasonable prudent person under the circumstances described in the evidence. Similarly, lack of ordinary care is the failure to use that degree of caution, attention or activity which is habitually employed or might reasonably be expected of a reasonable prudent person in the circumstances described in the evidence. If you find that the Defendant failed to use ordinary care, then she was guilty of negligence.
>
> "In determining whether the Defendant was guilty of negligence, keep in mind that the law makes no unreasonable demand, and the Defendant is not to be considered guilty of negligence if, in your opinion, she acted as a reasonable prudent person would have acted at the place and under the circumstances immediately preceding this accident. Of course, when I say guilty of negligence I don't use the word 'guilty' in the sense that she would be guilty of any criminal act; that is not intended in any way. It is simply that she failed to use ordinary care."

Appellant excepts contending that the trial court should have elaborated by requiring the jury to consider among the circumstances affecting the ordinary care of Mrs. Furness:

  a. the fact that she was using this private driveway for her own convenience and not as one rightfully there;
  b. the fact that this driveway ran through a busy shopping center where a lot of autos should be expected

to be entering or crossing this driveway from intersecting lanes;

c. the fact that the main east-west driveway was not a through driveway so that Mrs. Furness had no preferential right of way over Mrs. Atran but each owed the same duty to look out for and keep control to avoid the other;

d. the fact that Mrs. Atran had a preferential right of way at this intersection because she was coming from the right of Mrs. Furness and by now the right of way rule has become a customary rule of the road.

The trial court's reason for refusing the requested instructions was stated as follows:

"As to the further instruction after giving the instruction on ordinary care being needed by the individuals involved in this particular accident and further explanation of that, the Court feels the instruction already given encompasses everything and to limit it and mention certain instances could be considered to limit what the jury could consider rather than giving them the broad aspect of determining what was or was not that type of care that an ordinary person would use under similar circumstances."

Having concluded that the standard of care owed by appellee to appellant was that of ordinary care, "a" above requested by appellant would have distorted the court's charge. The court's charge with reference to ordinary care adequately covered points "b" and "c" raised by appellant.

The intersection was not a public road. Code (1967 Repl. Vol.), Art. 66½, § 231 provides:

"Except as hereinafter provided, all vehicles * * * shall have the right-of-way over other vehicles * * * approaching at intersecting *public* roads from the left, and shall give right-of-way to those approaching from the right." (emphasis added)

It was not always thus. The "right-of-way" law enacted by

the General Assembly by Chapter 687 of the Acts of 1916 provided in pertinent part:

> "All vehicles shall have the right-of-way over other vehicles approaching at intersecting roads from the left, and shall give right-of-way to those approaching from the right." Ch. 687, § 163 [1916] Md. Laws 1605 (repealed, amended, and reenacted 1929).

The word "public" was inserted by Chapter 224 of the Acts of 1929, Ch. 224, § 209 [1929] Md. Laws 615 (repealed, amended and reenacted 1939). There was an attempt in the case of *Snibbe v. Robinson*, 151 Md. 658, 135 A. 838 (1927) to have this Court hold the right-of-way law as it then existed (Code (1924), Art. 56, § 209) applicable to the intersection of a public road and a private road. It was contended that the word "roads" as used in that section meant private as well as public roads. The definition section, Code (1924), Art. 56 § 173 said:

> "* * * The terms 'highway,' 'roads,' 'public highways' or 'public roads' shall include any highway or thoroughfare of any kind used by the public, whether actually dedicated to the public and accepted by the proper authorities or otherwise."

Our predecessors there said:

> "* * * For by adopting those definitions the Legislature admitted their necessity, and if the term 'roads' had in its opinion been broad enough to embrace private roads, *a fortiori* it would have been broad enough to embrace *quasi* public roads of the character referred to in that definition, and no definition would have been necessary, and when it extended the usual and accustomed meaning of such words as 'public roads,' 'highways,' 'public highways' and 'roads' to embrace all roads used by the public, it certainly could not have meant to extend that meaning to include roads not used by the public, or it would have said so." 151 Md. at 662.

The definition of the term "public roads" in Code (1967 Repl. Vol.), Art. 66½ § 2 (58) differs in no relevant manner

from its definition in 1927. Since the General Assembly thought it necessary to amend the right-of-way statute in 1929 by inserting the word "public," we conclude that Code (1967 Repl. Vol.), Art. 66½ § 231 was not applicable to this intersection. Therefore, the instruction requested in point "d" would have been improper.

The charge must be considered as a whole. See *Wilhelm v. State Traffic Safety Commission*, 230 Md. 91, 185 A. 2d 715 (1962). Any given proposition may be expressed in more than one way. We think the instruction of the trial court adequately and correctly stated the applicable law. We see no prejudice to the appellant in the refusal to instruct as to points "b" and "c" requested by appellant and believe granting of points "a" and "d" would have been clearly erroneous.

Appellant contends the trial court was in error in instructing the jury that Mrs. Atran was negligent as a matter of law, while leaving the negligence of Mrs. Furness to the jury. The court's instruction removed the claim of Mrs. Atran from the jury. It did not remove the claim of the infant child and the trial court made it quite plain that the negligence of Mrs. Atran could not be imputed to the infant plaintiff.

The testimony of Mrs. Atran was that after bringing her car out of its parking position she headed north toward the East-West drive. At the intersection she stopped. She inched out. She looked to her left. She could see about a block down. She observed no moving traffic from her left when she inched out. She looked to her right. She saw a car pass and waited. She kept moving slowly. The record shows:

> "Q. When you started forward after looking right you started looking to your left, didn't you?
> "A. I looked to my left and then to my right and as I looked back to my left I got hit.
> "Q. You didn't see this car at any time, did you?
> "A. No, I didn't. * * *
>                           * * *
> "Q. Can you tell us any reason why you couldn't see this other vehicle?
> "A. Because she must have come so fast that when

I looked back to the left that is when we were hit.

"Q. When you looked to your left originally on another occasion you said you could see about two blocks.

"A. Well, one or two blocks. I can't remember exactly."

A disinterested eyewitness testified:

"I * * * simply observed her backing out, and then I saw her, noticed she put it in gear and went forward, and she didn't stop, and I saw the other car coming, and I said, 'My God, she is not stopping, they are going to hit,' and then they hit."

There was no evidence of great speed on the part of either vehicle. The pictures taken immediately after the accident, although showing substantial damage to the vehicles, are not indicative of great speed.

Regardless of the status of appellee, appellant was obligated to use ordinary care for the preservation of her own health and safety. In *Potts v. Armour & Co.,* 183 Md. 483, 490, 39 A. 2d 552 (1944) this Court said:

"* * * Contributory negligence is the neglect of duty imposed upon all men to observe ordinary care for their own safety. It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances. * * *"

In *Sears v. The Baltimore and Ohio R. R. Co.,* 219 Md. 118, 123, 148 A. 2d 366 (1959) we said:

"While it is true that the burden of proving contributory negligence is upon the defendant and the weight and credibility of conflicting evidence of the opposite parties is a jury question, nevertheless, consideration of the legal sufficiency of the evidence requires that we take account of the oft-repeated truism that if a witness says he looked and did not see when

if he had looked he must have seen, such testimony is unworthy of consideration. * * * By the plaintiff's own testimony as to the extent of the visibility just prior to his crossing the tracks and as borne out by reference to his own exhibit drawn to scale, no other rational inference is possible but that he either did not look before starting across the tracks, as he claimed to have done, or else he saw the train slowly approaching and thought he could cross the tracks in front of it. In either event, he was guilty of contributory negligence as a matter of law. * * *

"* * * In view of the stipulated facts as to the physical characteristics of the crossing and the appellant's own testimony, it overstrains credulity to believe that if he had kept on looking he would not have seen the approaching train in ample time to have stopped before the accident."

Put more succinctly as we said in *Henderson v. Brown,* 214 Md. 463, 472, 135 A. 2d 881 (1957) :

"* * * The appellant is thus left in the situation of one who either did not look when he should have, or did not see when he did look, and this, therefore, requires the finding that he was contributorily negligent as a matter of law."

The appellant was clearly contributorily negligent as a matter of law. Therefore, we find no error in the trial court's instruction. It adequately and fully, without prejudice to appellant, instructed the jury as to the law of this state.

*Judgment affirmed, with costs.*