(17 App. Div. 139.)

WOODBRIDGE v. MARKS.

(Supreme Court, Appellate Division, Third Department. May 5, 1897.)

1. ANIMALS—VICIOUS DOGS—RIGHT TO KEEP.
    It is not a nuisance to keep a vicious dog to guard one's premises, where the dog is cautiously used and sufficiently confined.

2. SAME—SUFFICIENCY OF CONFINEMENT.
    Vicious dogs kept to protect one's premises are cautiously used and sufficiently confined where they are so chained that they can move along the portion of the premises to be protected, but are secured from reaching any one coming to the house by any of the approaches provided for that purpose.

3. SAME—NOTICE.
    The owner of a vicious dog kept to guard his premises need not, as against trespassers, give notice of its vicious character.
    Putnam, J., dissenting.

Appeal from trial term, Essex county.

Action by William R. Woodbridge against William D. Marks. From a judgment for $2,500 damages and $222.62 costs, entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

The action was for damages caused by the bite of a dog owned by the defendant. Such dog was kept as a watch dog by the defendant, and, at the time of the injury, was chained upon his premises. Plaintiff had entered upon such premises in the evening, in search of a man whom he understood was at work there, and, while passing around the rear of defendant's house, came within the reach of the dog's chain, and was bitten. The further facts material to the case appear in the following opinion.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Hand, Kellogg & Hale, for appellant.
F. A. Rowe, for respondent.

PARKER, P. J. Upon the trial of this action, in addition to some direct evidence of their vicious character, it appeared that the dogs in question were procured by defendant for the purpose of guarding his premises, and were kept chained by him day and night. There was sufficient proof, therefore, to warrant the conclusion of the jury

that the dogs were vicious, and were known to their owner to be such (Brice v. Bauer, 108 N. Y. 428, 15 N. E. 695; Hahnke v. Friederich, 140 N. Y. 224, 35 N. E. 487); and upon this appeal we must assume such to have been the fact. It is well settled that a vicious dog running at large is a nuisance, because dangerous to mankind; and that whoever knowingly keeps such a dog, without keeping him properly confined, maintains the nuisance, and is responsible for the injury resulting therefrom. We held to that effect when this case was before us on demurrer to the complaint. 5 App. Div. 604, 40 N. Y. Supp. 728. But the broader question is now presented,—whether the owner who keeps such a dog chained upon his premises is in every instance responsible for any injury it may do to a person while so chained; and, if not, what conduct on the part of the person injured will relieve the defendant from liability. It is claimed on the part of the plaintiff that it is quite immaterial whether the dog is confined or not, unless it is so thoroughly secured that it cannot do injury; that the gravamen of the action is the keeping of a ferocious animal, knowing it to be such, and that the question of a negligent mode of confinement does not enter into the case; that, if one keeps such a dog, he does so at his peril, and is responsible for every injury that it succeeds in accomplishing. And, upon the trial, the circuit judge, adopting this view, charged as follows:

"It has been stated in your hearing that the defendant had a right to keep a vicious and dangerous dog upon his premises. He has no right towards any individual that entered upon the premises. If an individual keeps a vicious and dangerous dog upon his premises, knowing its propensities, and anybody is thereby injured, he cannot escape responsibility for that injury. So, if the defendant knew this was a dangerous and fierce dog, then the plaintiff is entitled to recover."

It was long ago decided in this state that "a man may keep a dog for the necessary defense of his house, his garden, or his fields, and may cautiously use him for that purpose in the nighttime." And the cases of Brock v. Copeland, 1 Esp. 203, and Sarch v. Blackburn, 4 Car. & P. 297, were cited by the court as authority for that proposition. See Loomis v. Terry, 17 Wend. 496. And in the same case it is said: "Where a dog is lawfully kept for the purpose of protection, a trespasser cannot maintain an action for an injury if he come in the way of the dog."

It is manifest that the rule claimed by the plaintiff, and adopted by the trial court, is squarely in conflict with that proposition. If the fact that the dog was purchased for the purpose of guarding the premises is sufficient evidence of his ferocious character (see Brice v. Bauer, supra), and if, as a matter of law, a man whose ferocious dog bites another is liable for the injury, no matter how the dog was confined at the time, or under what circumstances the injury was done, provided only the owner knew him to be ferocious, it follows that it is practically impossible to lawfully keep a dog for the purpose of defending one's premises. If the dog must be so confined that under no circumstances can he attack or injure a trespasser, then he may as well be dead; and the rule results in this: that no dog capable of defending property can be lawfully kept by any person. In my judgment, it has not yet been decided in this state that a man may not lawfully keep and cautiously use a ferccious dog for the defense of

his premises in the nighttime, or that a trespasser who comes in the way of a dog so used can recover for injuries sustained, even though his trespass is inspired by no wrongful purpose. It is true that the cases cited and relied upon by the plaintiff's counsel contain some statements and some lines of reasoning, which, pushed to a logical conclusion, would seem to lead to such a rule; but in each of such cases the facts upon which the decision is based do not present any such question. The case most relied upon is that of Muller v. Mc-Kesson, 73 N. Y. 195. In that case an unusually ferocious dog was kept by the owners as a guard for their shops in the city of Brooklyn. It had been the custom of one of their employés, who seems to have acted as keeper of the dog, to let him loose every night, in a large yard, surrounded by a high wall, and to chain him up every morning, before the men began their work. On the morning in question such keeper had neglected to chain him, and another employé of the defendants, having occasion to go into such yard in the performance of his regular duties, was bitten and injured by the dog. The court held that the defendant was liable, and that the fact that a co-employé of the plaintiff had neglected to chain the dog did not excuse the owner. This was a plain case of a ferocious dog left loose by the owner in the daytime, and free to attack the plaintiff while he was performing his duties in the place where the owner had sent him. And the decision, as applicable to those facts, in no way conflicts with the rule from Loomis v. Terry, above quoted. In discussing, however, the claim that the negligence of one employé in not confining the dog excused the owner from liability for the injury done to another employé, the court in substance declared that whoever keeps such a dog does so at his peril; that the gravamen of the action is not that the owner negligently omitted to confine the dog, but that he knowingly kept such an animal; and hence they declined to apply to the case the rule applicable to injury resulting from the negligence of a co-employé. Such reasoning leads to the conclusion that the owner of a dog that is in fact unconfined cannot excuse himself on the ground that he used due diligence to keep him confined, and that the dog managed to get loose without his fault or neglect. The risk of such a dog's escaping from proper confinement is placed upon the one who owns him, not upon the community. But it does not reach nor affect the question as to the owner's liability for injury caused by a dog that is not running at large. I conclude, therefore, that the mere keeping of a ferocious dog, knowing him to be such, for the purpose of defending one's premises, is not in itself unlawful; and, when injury follows from one so kept, the manner of his confinement and the circumstances attending the injury are all to be considered in determining the owner's liability. See, also, Farley v. Picard, 78 Hun, 560, 29 N. Y. Supp. 802; Logue v. Link, 4 E. D. Smith, 63; Werner v. Winterbottom (Super. Ct. N. Y.) 1 N. Y. Supp. 417; Worthen v. Love (Vt.) 14 Atl. 461; Laverone v. Mangianti, 41 Cal. 138; State v. Remhoff (N. J. Sup.) 26 Atl. 660; Shear. & R. Neg. (3d Ed.) § 192; Whart. Neg. § 914.

The question whether, in the case before us, the dogs were cautiously used and sufficiently confined, remains to be considered. Two dogs met the plaintiff at the gate when he entered upon the grounds.

They walked quietly by his side; then offered him no harm; and the proof does not show that they ever harmed him. They were not kept as watch dogs, and the evidence does not show that they were vicious ones. The question therefore does not apply to them, but is confined to the two which were chained. One of these dogs had a kennel at the northwest corner of the house. From that point an iron rod extended southerly about 50 feet, through a passage about 11 feet wide between the rear end of the house and an ice house and large cooler in which provisions were kept. Near the south end of that rod was another kennel, close to a chicken house, and an iron rod extended from that point easterly along the south side of the house, and at this kennel another dog was confined. In the daytime both dogs were chained to their kennels. In the night, however, each was so connected to the iron rod that the chain would slip along it; and they were thus given a range of about 50 feet in length, but by a chain which prevented either of them from reaching any door or stoop of the dwelling house, or any path or walk leading to it. The dwelling faced to the north and the east, and both the west and south sides were back yards, through which no path or roadway from the highway led. The only approach from the highway to either part of the house was up the cement walk that led to the front piazza, and thence, along the piazza, to either the front or the "kitchen door." Thus, it appears that the dogs, although so placed that they could effectually guard the ice house, cooler, and chicken house, were effectually secured from reaching any one coming to the house by any of the approaches provided for that purpose. The plaintiff entered the premises upon the north end, and by a carriageway 13 feet broad, of white gravel, which led directly to the barn, and also to the front door of the house. He turned from this to the west, crossed a strip of grass onto a cement walk that also led straight to the front door. He left this walk, and continued in a southwesterly direction, through a young orchard, in which there was no walk or path, until he reached the northwest corner of the house, where the kennel first above mentioned was placed. Here he was confronted by the dog located there. He did not turn back, but hastened on through the narrow passage between the house and cooler, the dog following along the rod, until he turned the southwest corner of the house. There the dog first met could not follow him, but the dog from the other kennel then met him, threw him down, and severely injured him. Plaintiff claims that he was searching for the barn, to find a man who, he understood, was at work there, and that he wandered from the roadway leading to it, and across the walk leading to the house, because in the darkness he could not follow them. These premises were occupied by the defendant only as a summer residence. At the time of the injury the house was closed up and unoccupied.

In my judgment, the keeping of those dogs was not an unlawful act, and their confinement was all that could be required. They were securely chained, within a space into which no stranger was invited to come, where he would have no business to go, and through which none could be reasonably expected to wander. Can it be said that, under such circumstances, the defendant was maintaining a nuisance

in his back yard?     Would the plaintiff have had the right to abate such nuisance, by shooting the dogs, in order that he might safely pass around that way in his search for the barn?     It will hardly be claimed that he had such right, and yet, if he is to recover at all against defendant, it must be upon the theory that the maintaining of such dogs in that way was the maintaining of a nuisance, or was a negligent act, as against the plaintiff.     If, when wandering through that passageway, the plaintiff had fallen into an open well, he would have had no action against the defendant therefor.     Such an unguarded opening would not have been a nuisance, nor would it have been a negligent act, as against the plaintiff.     It would have been but a danger maintained on his own premises, and in a locality upon which the plaintiff had neither invitation nor license to enter, and against which the defendant owed no duty to plaintiff either to protect or to warn him. Murphy v. City of Brooklyn, 118 N. Y. 575, 23 N. E. 887; Larmore v. Iron Co., 101 N. Y. 391, 4 N. E. 752.     It would seem, by analogy, that a vicious dog confined to a similar locality must be deemed well secured and cautiously used.

It is argued that a vicious dog is analogous to a spring gun, which may not be kept upon a man's premises even as against a trespasser, without notice given.     But the analogy is not complete.     A spring gun is more than likely to take human life.     It is placed, not for the purpose of warning others off, but with the design to do them great injury, even if life is not taken should they come in contact with it. A dog is rarely so vicious or powerful that it would endanger a man's life.     And the watch dog is used, not so much for the purpose of injuring an intruder, but rather as a means for warning and frightening him away.     A dog gives notice of his presence and attack.     A spring gun kills without any notice whatever.     There is a marked distinction between the cases, and the rule which should condemn the use of a spring gun as a lawless and cruel method of protection does not apply to a case like this.     There was nothing unusually or unnaturally vicious about the dog in question.     He would, it seems, attack and bite any stranger who insisted upon forcing his way onto the locality he was set to guard.     Beyond that, it does not appear that he was of a vicious nature, or dangerous to mankind.     Without attempting to decide how far the rule of contributory negligence applies against a person injured by a vicious dog, I rest my decision in this case upon the conclusion that the defendant, in keeping the dogs in the place and manner in which they were kept, did not maintain a nuisance, nor was he guilty of any negligent act, as against this plaintiff.     The case was presented to the jury upon an erroneous view of the law applicable to it, and, upon the facts as they appear from the plaintiff's own showing, he was not entitled to recover.

The judgment should be reversed, and final judgment for defendant, with costs of the action, should be entered upon this appeal.     All concur, except PUTNAM, J., dissenting.

PUTNAM, J. (dissenting).     It was held in Brice v. Bauer, 108 N. Y. 428, 15 N. E. 695, that "one who has in his possession and under his control an animal dangerous, unless reasonable precautions are taken

to prevent injury to others, is chargeable for an injury occurring because of his omission to take such precautions." This must be deemed to state the true doctrine as to the liability of the owner of a vicious dog for injuries done by it. The trial judge, however, in effect charged that, if the defendant's dog was vicious to his knowledge, the plaintiff was entitled to recover, and he declined to instruct the jury that if the dog "Alderman" was in a proper place for the protection of the house and outbuildings, and was properly secured, the defendant was entitled to a verdict. I concur in the views stated in the opinion of the presiding justice, that the exceptions of defendant to the portion of the charge of the trial judge, and his refusal to charge above referred to, require a reversal of the judgment. But I am not prepared to say that, under all the circumstances of the case, this court is justified in determining that proper precautions had been taken to prevent injury by the defendant's dogs. It is quite clear that any one not familiar with the defendant's premises, going there innocently and for a lawful purpose, as the plaintiff did, was liable to get within reach of the animals, and to sustain injury by them. The plaintiff being injured by defendant's vicious dogs, negligence on the part of the latter in confining them is presumed. Muller v. McKesson, 73 N. Y. 195. And evidence was necessary on his part to rebut such presumption. I am under the impression that in view of this presumption, and under all the circumstances of the case, the question whether the dogs were or were not properly confined is one that should be submitted to a jury on another trial.

I am in favor of reversing the judgment, and granting a new trial; costs to abide the event.