[No. 24355. Department One. February 8, 1933.]

FLORENCE BREWER, *Respondent*, v. ALBERT FURTWANGLER et al., *Appellants*.[1]

*Shorett, Shorett & Taylor* and *Bausman, Oldham, Cohen & Jarvis,* for appellants.

*Ryan, Desmond & Ryan* and *Howard W. Sanders,* for respondent.

MILLARD, J.—While an unintentional trespasser upon the defendants' land, plaintiff was attacked and seriously injured by a vicious dog owned by the defendants. This action was instituted to recover for the personal injuries sustained by the plaintiff. The trial of the cause to a jury resulted in a verdict for twenty-six hundred dollars, which was reduced by the trial court to eighteen hundred dollars, in favor of the plaintiff. From judgment on the reduced verdict, the defendants have appealed.

Appellants admit that the dog was vicious, and that they knew the dog was vicious. They concede the cor-

[1]Reported in 18 P. (2d) 837.

rectness of the instructions given, and that the judgment, as reduced, is not excessive for the injuries sustained. Appellants' sole contention is that the trial court erred in not granting the motion for judgment notwithstanding the verdict. It is argued that respondent's contributory negligence (trespassing on the land of the appellants at the time of the dog's attack) bars recovery by her.

The accident occurred in the daytime, February 3, 1931, in an industrial area of Seattle. Respondent operated a boarding house in Georgetown. Appellants resided at the northeast corner of Brandon and Utah streets, a few blocks west of respondent's boarding house. The course of Brandon street is east and west. Utah street intersects Brandon street at right angles, is one block west of First avenue south and one block east of east Marginal way. The scene of the attack was the appellants' property on the southwest corner of Brandon and Utah streets, where the offending dog was kept. On the north side of Brandon street was a dirt road, and a similar dirt roadway down the middle of Utah street. It appears that both streets were ungraded. There was testimony that the south portion of Brandon street was not used for travel. A defined roadway extended from the intersection of Utah and Brandon streets in a southwesterly direction onto appellants' property at the southwest corner of the intersection.

Appellants testified that, on entering their property by this road, one could not help but see a galvanized iron sign on top of a corner post, carrying the warning, ''Beware of the dog.'' Respondent testified, as did another person who was bitten some years previously by the dog, she never saw the sign. Appellants and their son were not in accord, by a number of years, as to the length of time the sign was on the post. The

verdict reflects acceptance by the jury as true the testimony of the respondent that she did not see the sign, or that no sign was there.

Entering on the appellants' land by this roadway, one passes a garden patch on his left, enclosed by a board fence. After passing that garden, the road dwindles out, opening into a yard or court. Within this open area—it is partly enclosed on the south by the appellants' barn and on the west by their garage, but is not fenced on the north, or east of the barn, or south of the garden patch—the appellants kept a watchdog—a vicious dog. The dog was securely fastened to a steel chain twenty-four feet in length, which permitted the dog to reach the door of the barn and the door of the garage. It was not possible for the dog to get off of appellants' land.

Entering this tract of land of appellants by the roadway extending from the southwest corner of the intersection of Utah and Brandon streets in a southwesterly direction, one had to travel a distance of seventy-six feet out into the middle of the unenclosed area to come within the dog's radius of travel. Appellants testified that on the garage, in plain view, were two signs: One warns, "Beware of the dog," and the other, "Keep out." Respondent never saw those signs, so she testified.

On the day of the accident, the respondent departed from her home with the intention of visiting appellant wife, and also to go to a manufacturing plant, then commencing construction on east Marginal way about one block west and four blocks north of the appellants' residence, which was situated just north of the northeast corner of Brandon and Utah streets. No one was at the appellants' home when the respondent called. She then went back to the intersection of Brandon and Utah streets. Respondent did not go on the north side

of Brandon street to reach east Marginal way. That road was muddy. Instead, she followed a fork of the road to the south, the private road of the appellants which entered their property from the southwest corner of the intersection and coursed in a southwesterly direction.

Respondent testified that she took the dry road without knowledge that it was a private road. She did not see anything to indicate that it was a private road. She did not see any signs warning her to beware of a dog. She did not know a dog was on the premises. She walked down this private road a distance of approximately seventy-six feet into the open area described above. She became confused when she discovered she could not continue the way she started. She stopped, probably wandered around a bit in her confusion and her endeavor to get her bearings, faced the east, and was attacked by the dog.

The terms "negligence" and "contributory negligence" are employed, for convenience and not in a strictly legal sense, in actions of the class in which the case at bar falls. The ground of liability in an action for injuries caused by a vicious dog is not negligence in the ordinary sense; hence, in its ordinary meaning, contributory negligence is not a defense. 1 R. C. L., § 65, p. 1122. Upon one who keeps, with knowledge, a vicious dog, devolves the duty to humanity to kill it, or to so restrict or confine the animal that it may not exercise the vicious propensities of which the owner had knowledge. The following apt language in *Clinkenbeard v. Reinert*, 225 S. W. (Mo.) 667, 13 A. L. R. 485, is applicable in the case at bar, though the two cases are dissimilar on the facts:

"The gist of the action for injury by the dog, after knowledge of its vicious propensity had been acquired by defendant, is not negligence in the manner of keep-

ing the dog, but is for keeping it at all. The duty of the defendant when he acquired knowledge of the ferocious disposition of the dog 'was to hang it,' not to keep it, at the risk of the lives and limbs of children and of adults who might lawfully come upon or pass by his premises at night. [Citing cases.] 'Such an animal is a nuisance, and the keeping of it after notice of its ferocious propensity is so wrongful that the owner is chargeable for any neglect to keep it with such care that it cannot do any damage to any person who, without essential fault, is injured by it.' "

We said in *Lander v. Shannon,* 148 Wash. 93, 268 Pac. 145, that, while not strictly applicable to the issues in that case, an instruction was correct, as a general proposition of law, which charged the jury

". . . that if one knowingly keeps a vicious and dangerous animal, which is accustomed to attack and injure mankind, he is *prima facie liable for injuries done by it without proof of negligence as to the manner of keeping it, the negligence on which the liability is founded is keeping such an animal with knowledge of its propensities."*

If it is established that a dog is of a vicious nature, and that the owner of such dog has knowledge, actual or constructive, of that fact, the owner keeps that dog at his peril, and is chargeable for any failure to so keep it that it can not do any damage to any person who, without essential fault, is injured by it. The owner must restrain such vicious animal, even as against a trespasser on the owner's premises.

"The authorities almost unanimously hold that the owner of a domestic animal, known by him to be vicious and disposed to attack mankind, is bound to restrain it even as against a trespasser on his own premises, and that he will not be permitted to set up the commission of the trespass as a defense. The trespasser here referred to, however, is not one who enters another's premises with the intention of committing a crime thereon, but is one who is a mere technical or unin-

tentional trespasser, although even as against criminal trespassers one is not permitted to employ any greater force than is reasonably necessary to repel invasion. This rule is upheld upon the well-established principle that the safety of human life may not be unnecessarily endangered in the protection of property, and is analagous to the rule denying to landowners the right to set spring guns as a protection against intruders, or to make other traps endangering the lives of any persons who may come in contact with them. The principle finds its most frequent application in the case of vicious dogs kept on one's premises for purposes of protection, . . ." 1 R. C. L., p. 1097, § 40.

The mere fact of trespassing upon the grounds of another is not. in and of itself, contributory negligence which will defeat an action to recover damages for injuries inflicted by a vicious animal belonging to the defendant and allowed to be at large upon the premises. *Eberling v. Mutillod,* 90 N. J. L. 478, 101 Atl. 519.

"The principle seems well established that a man may keep on his grounds any defensive animal as a necessary protection, but the fact that a person is a trespasser does not constitute him an outlaw and warrant another in negligently or wantonly injuring him. Therefore, to relieve himself from liability to a trespasser for injuries inflicted by a ferocious dog, the owner must prove that in the manner of keeping such an animal, and in its employment as a protective measure, he confined himself to strict necessity. As to just what comes within the pale of necessity the authorities are not altogether clear, but there seems to be little doubt that one is not justified in keeping, untied, on his premises in the daytime a vicious dog, and that for any injuries thereby occasioned to a voluntary or an involuntary trespasser who chances to be exposed to its ferocity, he is responsible. Where, however, one is bitten while trespassing or even negligently or incautiously coming on another's premises at night, the view has been entertained that the owner is not liable, as loosing dogs at night is deemed necessary and proper for protective purposes. Other courts, out of

regard for the sanctity of human life, take the view that, as a savage dog is a dangerous instrument of protection, the owner's keeping it on the premises to protect them against trespassers is unlawful and that the owner has no right to keep such a dog for any purpose, unless it is kept in an inclosure or building, in the night-time, with caution, and as a protection against criminal wrong-doers, and if its size and ferocity are such as to endanger life, then only as a protection against a felony by 'accident or surprise.' " 1 R. C. L., p. 1123, § 66.

The respondent was a mere technical or unintentional trespasser upon the land of the appellants. While there, she was injured by appellants' dog, which appellants knew was vicious. The land was not enclosed, and the dog allowed to roam at large thereon, it is true. The land was unfenced or unenclosed as described above, but the dog was chained, his radius of travel being limited to twenty-four feet, the length of his chain. A dog chained on the unfenced property of his owner is as much at large on the premises of his owner, *within the arc of his chain,* as an unchained dog permitted to run at large on fenced property of his owner. The one is confined to all of the premises enclosed by the fence. The chained dog is confined to the area within the radius of his chain. One is no more justified in keeping a vicious dog chained on unenclosed land in the daytime, as in the case at bar, than he is in keeping a vicious dog untied on fenced land in the daytime. In either case, for any injury thereby occasioned to a voluntary or involuntary trespasser who chances to be exposed to its ferocity, he is responsible.

The judgment should be, and it is, affirmed.

BEALS, C. J., PARKER, and MITCHELL, JJ., concur.

HOLCOMB, J. (concurring in the result)—I concur in the result, but in so doing, do not wish to be considered as subscribing to the doctrine that an owner cannot maintain a dangerous dog upon his own premises for the protection of himself and his property, under proper restraint and warning. Had respondent in this case been an intentional invader and wrongdoer, instead of an unintentional trespasser, no liability should be allowed, under the state of things shown.