MONDSHOUR, Infant, etc., ET AL. *v.* MOORE, ET AL.

[No. 201, September Term, 1969.]

*Decided February 5, 1970.*

TORTS—*Trespasser—Owner Of Chattel Owes No Duty To Trespasser Other Than To Refrain From Wilful Or Wanton Misconduct Or Entrapment—That Trespasser Is Child Held Immaterial —Doctrine Of Attractive Nuisance Does Not Apply.* Where child

618

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*John C. Evelius,* with whom were *John H. Doud, III* and *Gallagher, Evelius & Finnerty* on the brief, for appellants.

*Hamilton O'Dunne,* with whom was *Patrick A. O'Doherty* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

The unfortunate set of circumstances producing this case was set in motion when Kerry Donald Mondshour (Kerry), then six years of age, mounted the rear wheel of a stopped Baltimore Transit Company bus to show one of his friends a "trick". Kerry was injured, as a result of which suit was filed against the Baltimore Tran-

sit Company and its driver.[1] At the close of the plaintiffs' case the trial judge directed a verdict for the defendants, thus producing this appeal. We shall affirm the action of the trial judge.

Kerry was with a friend at the intersection of Payson Street and Frederick Avenue in Baltimore City. The bus stopped at the intersection. The boys went to the back of the bus and Kerry asked his friend, "Do you want to see a trick?". The friend replied, "I don't care." Kerry then stuck his foot on the rear wheel and reached up for the window pane. When the bus started he was pulled under the wheel which crushed his pelvis and right leg.

The bus driver was called as a witness by the plaintiff. It was established by his testimony that he knew of Kerry's presence on the corner, but not on the bus. The plaintiffs contended that there was negligence on the part of the Transit Company in that there was no rear view mirror on the right side of the bus, despite frequent "bus-hopping". They further contended that there was negligence on the part of the driver in that he failed to ascertain Kerry's location prior to pulling away from the corner. It was pointed out that buses more recently acquired by Baltimore Transit Company than the bus here in question are equipped with right rear view mirrors.

Kerry recognizes the doctrine enunciated by our long series of cases that state, "[T]he owner of land owes no duty to a trespasser or licensee, even one of tender years, except to abstain from wilful or wanton misconduct and entrapment." *Fopma v. Bd. of County Comm'rs*, 254 Md. 232, 234, 254 A. 2d 351 (1969) ; *Herring v. Christensen*, 252 Md. 240, 241, 249 A. 2d 718 (1969) ; *Levine v. Miller*, 218 Md. 74, 79, 145 A. 2d 418 (1958), and cases there cited. He urges, however, that the point here involved "is, in fact, an undecided part of Maryland law", that "[t]here is no Maryland case in which recovery [has]

---

1. Kerry apparently mounted a two pronged attack in his effort to recover for his unfortunate injuries. See *Mondshour v. General Motors Corporation*, 298 F. Supp. 111 (D. Md. 1969), an action for defective design in which he was likewise unsuccessful.

been denied to a child injured on or by a chattel because he was at that time a trespasser." Kerry says that the trespass doctrine is "recourse to an anachronistic aphorism [which] merely obfuscates the true inquiry." He doesn't in so many words call for application of the attractive nuisance doctrine, but it is apparent that this is the basic direction of his argument.

The problem of children on buses, other motor vehicles, and, in an earlier day, on street cars is not new. It is interesting to note that even in most of those jurisdictions which, unlike Maryland, have adopted the attractive nuisance doctrine that theory of law has been held not applicable to situations similar to this. See, for instance, 7 Am.Jur.2d *Automobiles and Highway Traffic*, §§ 433-435 (1963); 55 Am. Jur. *Urban Transportation*, § 202 (1946); Annot. "Attractive Nuisances — Vehicles", 3 A.L.R.2d 760 at pp. 765, 767 and 792; and 60A C.J.S. *Motor Vehicles*, § 401 (1969).

Kerry in his brief says, "[T]here are cases reported in various jurisdictions, including our own, in which child trespassers injured on or by personal property have been awarded a recovery in damages. In those cases, the trespass rule has proved no bar to recovery. In some it was ignored; in others deemed inapplicable." The only Maryland case cited by him is *Pindell v. Rubenstein*, 139 Md. 567, 115 A. 859 (1921). In that case a little boy not quite three years old was walking down a public street holding the hand of his ten-year-old aunt. She testified that she was walking between him and a fence, he being next to the gutter. He apparently was behind her, however. In some fashion a gate in the fence fell on the boy. The aunt apparently did not see it fall. There was testimony as to the defective condition of the gate. There was no direct evidence of any trespass so far as the child was concerned. It is true that there was an attempt to show that the aunt said that the boy climbed on the gate. The aunt denied making any such statement, however, and this Court held the testimony that she had made such statement "had no effect other than to impeach her cred-

ibility by contradicting her, and was not in itself sub-
stantive evidence of the facts referred to in the state-
ment attributed to her." *Id.* at 580. Thus, *Pindell* does not
put forth the doctrine espoused by Kerry here, nor have
we found a Maryland case that does.

As we see it, the issue here involved was disposed of
by this Court in *State v. Fidelity Warehouse Co.*, 176 Md.
341, 4 A. 2d 739 (1939). In that case a child had fallen
from a raft owned by the defendant and was drowned.
The raft was moored in public waters. Therefore, it was
in no way a part of the defendant's real property. The raft
was claimed to be in full view of a child of tender years.
It was alleged that the defendant knew young children
were constantly playing on the highways about the in-
tersection and nevertheless "permitted a dangerous, de-
fective, and unsafe raft or float to remain on the water
along its property at the foot of Battery Avenue, un-
guarded and without notice or warnings of any kind or
character to the children to warn them of the danger of
the use of the raft". The further contention was made
that the particular child was mentally sub-normal. On
those facts there was an attempt made to persuade this
Court that a right of action arose on the theory that the
doctrine of "attractive nuisance" was applicable. Judge
Parke there said for the Court:

> "A raft, which is floating in the harbor at
> short rope's end from defendant's warehouse,
> and is inaccessible to any one in the use of the
> highway on land except by leaving the highway
> and becoming a trespasser by climbing over
> the barrier of a stone wall and going upon the
> raft, is neither such a danger as to be a nui-
> sance, nor an invitation extended for its occu-
> pation or use by adult or child. Invitation in-
> volves the existence of an intent to induce others
> to act responsively. The raft was a necessity in
> the defendant's business. Its utility was ob-
> viously so limited, and the mere fact that the

venturesome impulse or disposition of a child would urge its appropriation as a plaything was merely an incidental and unintended effect which may not be ascribed to an intention of the owner. The landowner's purpose would be partly if not wholly defeated by the presence of children and their use of the raft. There is surely no duty on the part of the owner of the raft to take any step to safeguard persons generally. Nor is it a duty of the owner to protect children from their own negligence under the given circumstances. Whence comes the duty of the owner to act as the protector of children in their play or to keep them away from his property, which is not to be reached by the children except by going over the protective barrier of a stone wall? Is the owner to furnish the children with the care which neither the State, their parents, nor their guardians give? Is he to respond in damages for such omission in an action brought for the pecuniary benefit of these parents? (citing authorities)

"The owner had no actual knowledge of the trespass, and had never permitted nor acquiesced in the use of the raft by children. It is true that the defendant knew that children played in the adjacent highway which ended at the stone wall, but it is not charged nor may it be assumed that the defendant either desired or intended to have the children come upon the raft. Nor may it be said that its lawful use of the raft in the course of its lawful business was other than what was reasonably necessary and permitted, if owners are to have the ordinary beneficial use of property within the limits of their own property rights. * * *
* * *

"For the reasons here stated, the child who was drowned was a trespasser, and he is none

the less so because the raft is not a part of the realty. *Hughes v. Macfie,* 1863, 2 Hurl. & Colt., 744; *Gay v. Essex Electric Street R. Co.,* 1893, 159 Mass. 238, 34 N. E. 186; *Bishop v. Union R. Co.,* 1884, 14 R. I. 314; *Emerson v. Peteler,* 1886, 35 Minn. 481, 29 N. W. 311; *Jefferson v. Birmingham etc. Co.,* 1896, 116 Ala. 294, 22 So. 546; *Rushenberg v. St. Louis etc. R. Co.,* 1891, 109 Mo. 112, 19 S. W. 216. Since the allegations of the declaration do not disclose any breach of duty by the defendant to the trespassing child, the demurrer was rightly decided, and the judgment must be affirmed." *Id.* at 347-48, 350.

The language used by Judge Parke is pertinent here. We are not unsympathetic with the injuries sustained by Kerry. His injuries, however, flow from his "trick", not from the breach of any duty owed him by the defendants under the established law of this state—and, apparently, of most states. The comment of Chief Judge McSherry in *Demuth v. Old Town Bank,* 85 Md. 315, 37 A. 266 (1897), is particularly appropriate here:

"This is a case of exceedingly great hardship, and we have diligently, but in vain, sought for some tenable ground upon which the appellants could be relieved from the loss that an affirmance of the decree appealed from will necessarily subject them to. But hard cases, it has often been said, almost always make bad law; and hence it is, in the end, far better that the established rules of law should be strictly applied, even though in particular instances serious loss may be thereby inflicted on some individuals, than that by subtle distinctions invented and resorted to solely to escape such consequences, long settled and firmly fixed doctrines should be shaken, questioned, confused or doubted. *Lovejoy v. Irelan,* 17 Md. 527. It is often difficult to resist the influence which a palpable hardship

is calculated to exert; but a rigid adherence to fundamental principles at all times and a stern insensibility to the results which an unvarying enforcement of those principles may occasionally entail, are the surest, if not the only, means by which stability and certainty in the administration of the law may be secured. It is for the Legislature by appropriate enactments and not for the Courts by metaphysical refinements to provide a remedy against the happening of hardships which may result from the consistent application of established legal principles." *Id.* at 319-20.

A more succinct and equally applicable statement appears in *Herring v. Christensen, supra,* where it was said:

"To adopt appellants' position would eliminate the consistency and stability in this Court's rulings which are necessary for our citizens to know their respective rights and obligations." *Id.* at 242.

*Judgment affirmed, appellants
to pay the costs.*