496 A.2d 1099

Marie MECH

v.

HEARST CORPORATION, t/a News American Baltimore.

No. 1550, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Sept. 9, 1985.

424

Frederick Wm. Miller, Baltimore (Susan S. Miller, Baltimore, on the brief), for appellant.

G. Macy Nelson, Baltimore (Anderson, Coe & King, Baltimore, on the brief), for appellee.

Argued before WEANT, ALPERT and ROBERT M. BELL, JJ.

WEANT, Judge.

This argle-bargle was precipitated by these facts. On 28 August 1981, appellant Marie Mech decided to spend part of that day's lunch hour in Baltimore City searching for a public parking lot which reputedly charged a reasonable monthly fee about which she had heard from one of her co-workers. After some initial difficulty, she came to the block she had been given where she found a lot surrounded by a high chain-link fence. The fence had a large open gate; inside was a "plain building" with an open door. The woman did not observe any signs on the fence or in the lot. There were some trucks on the lot but no cars. Mech assumed that she was at the right place.

Unfortunately, she had not found a public parking lot but a truck garage facility belonging to appellant, the Hearst Corporation, publisher of the Baltimore News American. After Mech had walked a few steps through the open gate and onto appellee's property, appellee's guard dog, "Smokey," appeared, apparently unchained, "growling and snarling." Smokey knocked Mech to the ground, causing damage to her right knee and other injuries.

Mech brought an action for damages in the Superior Court (now the Circuit Court) for Baltimore City. She

alleged that appellee was liable under two theories, negligence and strict liability. The case was tried before a jury in April, 1984. At the close of all the evidence the trial judge granted appellee's motion for directed verdict as to both counts on the grounds that appellee owed Mech, a trespasser or "bare licensee," no duty other than to refrain from willful or wanton injury or entrapment, and that the evidence was insufficient to support a finding of a breach of this duty. On appeal, Mech presents these questions:

1. Was there sufficient evidence for the jury to determine the status of [appellant] on [appellee's] property?

2. Was there sufficient evidence for the jury to determine if [appellee] was guilty of willful misconduct or entrapment?

3. Was there sufficient evidence for the jury to decide if [appellee] was liable under the theory of strict liability?

4. Should the Court abolish the common law distinctions in landowner's duty towards an invitee, licensee or trespasser?

For the reasons set forth below, we affirm.

1.

It is a venerable principle of Maryland law that in negligence actions the standard of care required of owners and occupiers of land with respect to an individual on their land is determined by "the individual's status while on the property, *i.e.*, whether he is an invitee, licensee, or trespasser." *Bramble v. Thompson*, 264 Md. 518, 521, 287 A.2d 265, 267 (1972). Where the person is a "bare licensee"—one who enters the property for his own purpose or convenience and with the landowner's consent but not as a social guest—the law imposes only a minimal obligation on the landowner: to refrain from willfully or wantonly injuring or entrapping the person "once his presence is known." *Id.* The same standard applies to trespassers, defined as those who enter without privilege or consent of the landowner. 264 Md. at 522, 287 A.2d at 267. In ruling that, as a matter of law, Mech was "at most, a bare licensee," the trial judge

concluded that the above-described standard was applicable in the case *sub judice*. Mech now asserts that her status on appellee's land was a question of fact which the judge should have submitted to the jury. In particular, Mech claims that there was sufficient evidence to support a finding that she was an implied invitee, and therefore entitled to a higher standard of care.

 Generally, invitees are those who enter the subject property in connection with the owner's business. *Crown Cork and Seal Co. v. Kane*, 213 Md. 152, 157, 131 A.2d 470, 472 (1957). An invitation may be implied, however, from "circumstances, such as custom, the acquiescence of the owner in habitual use, the apparent holding out of premises to a particular use by the public, or simply in the general arrangement or design of the premises." 213 Md. at 159, 131 A.2d at 473. According to Mech, the jury may properly have concluded that this objective test was satisfied, in view of circumstances including (a) the "design and general appearance" of appellee's lot, (b) the open gate to the lot, and (c) the absence of warning signs.

 We disagree, first of all, that there was any evidence to support a finding that Mech was an invitee. In order for there to be an implied invitation, "there must be, in the conduct or words of the possessor, some inducement or encouragement to enter, and mere permission or acquiescence is not sufficient." *Woodward v. Newstein*, 37 Md.App. 285, 293, 377 A.2d 535, 540 (1977), *cert. denied*, 282 Md. 740 (1978). There can be no doubt that proof of encouragement or inducement by appellee is absent from the record before us. Even in an urban setting, the presence of an open gate leading to an unmarked lot does not, in our view, indicate acquiescence to intrusions, let alone an inducement. Moreover, in contrast to *Crown Cork, supra*, there was no evidence of a custom of permitting Mech or other strangers to visit the property. Indeed, appellee's use of a guard dog for several years contradicts this hypothesis. Finally, the other cases cited by Mech are similarly distin-

guishable. *See, e.g., Gray v. Sentinel Auto Parks Co.,* 265 Md. 61, 288 A.2d 121 (1972); *Atran v. Furness,* 251 Md. 216, 246 A.2d 767 (1968); *Hutzler Brothers Co. v. Taylor,* 247 Md. 228, 230 A.2d 663 (1967).

■ Although we agree with the trial judge that there was no basis for finding that Mech was an implied invitee, we believe his characterization of her status as "at most, a bare licensee" was in fact too charitable. As we noted above, neither the open gateway to appellee's property nor any of the other circumstances described at trial suggest that appellee had acquiesced or consented, expressly or otherwise, to Mech's entry on the site. Absent such consent or acquiescence, Mech could only have been a trespasser. *See, e.g., Bramble, supra; Carroll v. Spencer,* 204 Md. 387, 393, 104 A.2d 628, 630 (1954). Although this point is inconsequential with regard to Mech's negligence claim, because the applicable standard of care is the same, *see supra; infra* Part 2, it is material to two other issues raised. *See infra* Parts 3, 4.

### 2.

Next, Mech argues that, if she was a trespasser, there was sufficient evidence to support a finding that appellee's conduct did not conform to the appropriate standard of care. Specifically, she claims that, in light of evidence that Smokey had bitten others before her, the jury may properly have found that appellee acted willfully or wantonly in failing to take preventive measures such as warning signs.

■ A motion for directed verdict should be denied if there is the slightest legally relevant and competent evidence from which a rational mind could infer the material facts in issue. *Impala Platinum Limited v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 328, 389 A.2d 887, 906 (1978). Accordingly, we consider whether there was any evidence, properly admitted, tending to show that appellee acted willfully or wantonly.

■ "Willful or wanton" generally denotes conduct that is extreme and outrageous, in reckless disregard for the

rights of others. *E.g., Medina v. Meilhammer,* 62 Md.App. 239, 249–50, 489 A.2d 35, 40 (1985). There was no evidence that appellee *intended* to injure Mech. As to whether the conduct was extreme and outrageous, the *Bramble* court's comments are instructive, though the holding in that case is not strictly dispositive of this case. In summarizing its opinion, the Court said, "[w]e merely conclude that the use of a vicious watchdog to protect its owners' property does not constitute [wanton or willful entrapment or misconduct]." *Bramble,* 264 Md. at 526, 287 A.2d at 270. The facts in *Bramble* are highly analogous to those in the case *sub judice.* The *Bramble* opinion does not indicate that any warning signs had been placed by the landowner. Though appellee's similar failure to place warning signs may have been inconsiderate and ill-advised, it is clear, we believe, that under the law of this State appellee's conduct was not so extreme and outrageous that the jury could properly have characterized it as willful or wanton. Therefore, the trial judge correctly entered a directed verdict for appellee on the negligence count.

### 3.

Next Mech contends that the trial judge improperly granted a directed verdict for appellee on Mech's strict liability count.

The owner of an animal that injures another may be strictly liable for damages if the owner had prior notice that the animal was vicious. *Twigg v. Ryland,* 62 Md. 380 (1884); *Slack v. Villari,* 59 Md.App. 462, 473, 476 A.2d 227, 232, *cert. denied,* 301 Md. 177, 482 A.2d 502 (1984). This rule does not apply, however, if the plaintiff was a trespasser at the time of injury and the animal was a guard dog. *Bramble,* 264 Md. at 522–23, 287 A.2d at 268. In such a situation, the negligence standard is the sole standard of care, and the plaintiff must show that the defendant failed to conform his conduct to this standard in order to recover damages under either theory. *Id.* Having properly con-

cluded that Mech could not recover under her negligence count, the trial judge correctly entered judgment for appellee on the strict liability claim as well.

4.

 Finally, Mech urges us to abolish the common law distinctions regarding the standard of care to invitees, licensees, and trespassers. In declining to do so, we point out that in a recent case involving trespassers the Court of Appeals reaffirmed these rules. *Murphy v. Baltimore Gas & Electric Co.*, 290 Md. 186, 428 A.2d 459 (1981).

*JUDGMENTS AFFIRMED.*

*COSTS TO BE PAID BY APPELLANT.*

ALPERT, Judge, concurring:

I agree with the court in affirming the judgments of the trial court but since I disagree with its analysis in issues 2 and 3 (the application of *Bramble v. Thompson*, 264 Md. 518, 287 A.2d 265 (1972)) this concurring opinion is submitted.

The duty owed to a trespasser, inadvertent or otherwise, is to refrain from entrapping the trespasser or injuring him through wilful or wanton misconduct. *See Mondshour v. Moore*, 256 Md. 617, 261 A.2d 482 (1970). Because appellant in this case was, at best, a bare licensee, the question is whether the use of a vicious watchdog was tantamount to such conduct. *See Macke Laundry Service Co. v. Weber*, 267 Md. 426, 428, 298 A.2d 27 (1972) (duty owed bare licensee is the same owed to a trespasser).

The court summarily answers this question in the negative. The court seems to conclude that as a matter of law, the use of a "vicious watchdog" could never constitute such conduct. The court finds support for this conclusion in an isolated passage of *Bramble v. Thompson*, wherein the Court of Appeals, addressing the sufficiency of a plaintiff's complaint, stated:

We need not decide to what extent any particular device may be deployed in specific circumstances before it be-

comes wanton or wilful misconduct or entrapment. We merely conclude that the use of a vicious watchdog to protect its owners' property does not constitute such action.

264 Md. at 526, 287 A.2d 265. It is from this passage the majority implies that under no circumstances can a dog owner be held liable to an inadvertent trespasser because under no circumstance can the use of a vicious watchdog be held to constitute either entrapment or wilful or wanton misconduct.

The court's reading of *Bramble* is, however, flawed.

*Bramble* should not be read so as to preclude a dog from ever being an instrumentality to wilful or wanton misconduct.

The appellants, in *Bramble*, argued that the dog's conduct was analogous to a spring gun whose use constituted wanton or wilful misconduct. The *Bramble* court, like other courts, considered this analogy, *see Melsheimer v. Sullivan*, 1 Colo.App. 22, 27 P. 17, 19 (1891) (citing *Johnson v. Patterson*, 14 Conn. 1 (1840)); *Brewer v. Furtwangler*, 171 Wash. 617, 18 P.2d 837, 839 (Sup.Ct.Wash.1933), and agreed with the distinction drawn by the intermediate appellate court of New York in *Woodbridge v. Marks*, 17 App. Div. 139, 45 N.Y.S. 156 (1897), wherein it said:

A spring gun is more than likely to take human life. It is placed, not for the purpose of warning others off, but with the design to do them great injury, even if life is not taken should they come in contact with it. *A dog is rarely so vicious or powerful that it would endanger a man's life. And the watch dog is used, not so much for the purpose of injuring an intruder, but rather as a means for warning and frightening him away. A dog gives notice of his presence and attack.* A spring gun kills without any notice whatever.

45 N.Y.S. at 160 (emphasis added).

It was within this context, i.e., a dog is not the functional equivalent of a spring gun, that the *Bramble* court conclud-

ed that the use of a watchdog did not constitute wanton or wilful misconduct. I agree that when such a distinction can be drawn, the use of the dog does not amount to wanton or wilful misconduct. Where no distinction can be drawn— where a dog is the functional equivalent of a spring gun— there is no reason to conclude that, as a matter of law, the use of a dog could not constitute such misconduct.

The liability incurred in protecting one's property is closely allied with the privilege to protect the same property. An owner's privilege is limited in that the force used must be reasonably necessary and not excessive. When defending property alone, there is no privilege to use any force calculated to cause death or serious bodily injury. *See* Prosser & Keeton, *Law of Torts,* § 21 p. 134 (3rd ed. 1984).

Where the property is occupied, however, there is a privilege to use deadly force if such force is reasonably necessary. In Maryland, a person's privilege to defend his property was first discussed in a criminal context by the Court of Appeals in *Crawford v. State,* 231 Md. 354, 190 A.2d 538 (1962). There the court, in reversing a manslaughter conviction, noted that in a majority of jurisdictions:

> if an assault on a dwelling and an attempted forcible entry are made under circumstances which would create a reasonable apprehension that it is the design of the assailant *to commit a felony* or to inflict on the inhabitants injury which may result in loss of life or great bodily harm, and that the danger that the design will be carried into effect is imminent, a lawful occupant of the dwelling may prevent the entry even by taking of the intruder's life.

231 Md. at 360, 190 A.2d 538 (emphasis in original). The court then recognized that the "rules regarding the defense of one's person and the rules regarding the defense of one's habitation are generally similar ... the force used must not be excessive." *Id.* at 362, 190 A.2d 538.

In a later case, *Law v. State,* 21 Md.App. 13, 318 A.2d 859, *cert. denied,* 272 Md. 744 (1974), we similarly held that

where necessary an owner was privileged to use deadly force to prevent an entry into his home by an intruder who intends to commit a felony therein. We recognized, however, that the use of such force was not justified " 'unless unavoidable.' " *Id.* at 28, 318 A.2d 859 (quoting *The Law of Crimes and Criminal Procedure* (2nd ed. § 345)).

Unfortunately, our courts have not discussed the privilege to use such force in the context of a suit seeking civil liability. I believe, however, that the duty owed to a trespasser, as recognized in *Mondshour,* would not be breached by the use of some force to repel the trespasser and protect the property. A breach would occur, however, where the degree of force used constituted wanton or wilful misconduct. We said, in *Medina v. Meilhammer,* 62 Md. App. 239, 489 A.2d 35 (1985), that wilful or wanton conduct " 'tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent.' " *Id.* at 250, 489 A.2d 35 (quoting Prosser & Keeton, *Law of Torts,* § 34 p. 214 (5th ed. 1984)). Hence, if the force be reasonable, no wilful or wanton misconduct could be construed.

The determination of reasonableness, wantonness or wilfulness, however, should be left to the trier of fact if, based upon the evidence presented, reasonable minds could differ. *Mondawmin Corp. v. Kres,* 258 Md. 307, 266 A.2d 8 (1970). I differ from the court in its singular reliance on *Bramble* so as to withdraw the issue from the jury's consideration.

I believe that if appellant had produced evidence that appellee's dog was placed on the lot for the purpose of injuring trespassers and that the dog was trained to kill or inflict serious bodily harm without notice (like a spring gun), sufficient evidence of wilful or wanton misconduct would have been presented to permit a determination by the trier of fact. There was neither direct or circumstantial evidence that the dog was either trained to inflict serious bodily harm or had in the past injured strangers wandering

onto the lot. She offered testimony only to the effect that she wandered onto appellee's premises while searching for a parking lot and that while on the lot she encountered appellee's dog, which first snarled and growled at her and then knocked her down. She offered no testimony that the dog was used for the purpose of injuring her and/or that it was appellee's plan to spring the dog on unwary strangers. Further, there is no proof that the dog posed a threat to either her life or that of any other inadvertant trespasser. Indeed, it appears from the record that appellant was aware, albeit momentarily, of the dog's presence prior to its knocking her down. Under these circumstances, where the evidence of appellee's wanton or wilful conduct, even when considered in a light most favorable to appellant, was insufficient to cause reasonable minds to differ as to the result, it was not error to grant a directed verdict for appellee.

ROBERT M. BELL, Judge, dissenting.

I believe that the evidence regarding the nature and quality of appellee's conduct with respect to the control of its dog on its premises, which was presented during appellant's case, was sufficient to enable appellant to survive a motion for directed verdict. Therefore, I dissent from that portion of the majority opinion that holds, as a matter of law, the evidence was insufficient to establish willful and wanton misconduct or entrapment on the part of appellee.

Before setting out the facts presented during appellant's case, I think it well to rehearse the standard by which a trial judge's grant of a motion for directed verdict [1] is reviewed. "If there is any legally relevant and competent evidence, however slight, from which a rational mind could infer a fact in issue, then a trial court would be invading the province of the jury by declaring a directed verdict. In such circumstances, the case should be submitted to the jury and a motion for directed verdict denied. (citation

---

1. Former Md.Rule 552 (present Rule 2–519).

omitted)" *Impala Platinum v. Impala Sales, (U.S.A.), Inc.,* 283 Md. 296, 328, 389 A.2d 887, (1978). *See also Beahm v. Shortall,* 279 Md. 321 (1977), *Ralph Pritts & Sons, Inc. v. Butler,* 43 Md.App. 192, 403 A.2d 830 (1979). Thus, when ruling on a motion for directed verdict, the trial judge must consider the evidence presented, together with all reasonable and legitimate inferences deducible therefrom, in the light most favorable to the party against whom the motion is made, *Gleason v. Jack Alan Enterprises, Inc.,* 36 Md. App. 562, 374 A.2d 408 (1977), and must grant the motion only if but one inference can be drawn with regard to the issue presented. *Smack v. Jackson,* 238 Md. 35, 207 A.2d 511 (1965).

With these principles firmly in mind, the facts presented by appellant will be set forth in the light most favorable to her. Appellant, having been informed by a fellow employee of the existence of a parking lot in the 400 block of Front Street, at which she could park her car at a reasonable monthly rental, sought to locate the parking lot during her lunch break. Although she had difficulty finding the correct block of Front Street, when she arrived in the 400 block, she came upon appellee's property. It was located in a commercial area, surrounded by a chain link fence higher than she was tall, with the gates wide open. Inside the fence was a plain building with an open door. To appellant, it looked like a large lot. No signs of any kind were observed on or about the parking lot. Thinking that it "was the lot [she] was looking for", appellant entered to "make arrangements to park [her] car", or to ask "if [she] was in the right place". When she had taken two or three steps inside the lot, appellee's dog, a German Shepherd, named Smokey, growled at her and attacked, knocking her to the ground and causing various serious injuries.

Appellant was transported by ambulance to the hospital, where she was treated. Upon her release, in company with her sister and brother-in-law, appellant revisited the scene of her injuries. At that time, around 4 p.m., the dog was observed secured by a "short" chain. The gates to the lot

were still open and inside were gasoline pumps, an attendant's station, a cement block building and a row of barrels. Trucks, with the name "News American" on the side, and cars were parked on the lot. No signs of any kind were visible on the premises.

The majority finds support for its conclusion that appellee is not guilty of willful and wanton misconduct or entrapment in *Bramble v. Thompson*, 264 Md. 518, 287 A.2d 265 (1972). Implicit in the rationale underlying that conclusion and in the majority opinion itself is the proposition that the keeping of a known vicious dog on private property cannot constitute, under any circumstances, willful and wanton misconduct or entrapment. My disagreement with the majority's conclusion and its rationale is emphatic.

Before proceeding to consider the evidence actually presented, its tendency to prove willful and wanton misconduct or entrapment on the part of appellee, and the applicability of *Bramble*, I think it appropriate to point out that at work here are, potentially, two distinct theories on which liability may be premised. The first, which I will call, "premises liability", and which was discussed in part I of the majority opinion (with which I agree), is dependent on the standard of care owed to an individual user of property, which, in turn, is dependent upon that individual's status while on the property. *See, Murphy v. Baltimore Gas and Electric Co.*, 290 Md. 186, 428 A.2d 459 (1981); *Bramble, supra; Kight v. Bowman*, 25 Md.App. 225, 333 A.2d 346 (1975). It is from this theory that we glean the standard of care—to refrain from willful and wanton misconduct or entrapment—owed a trespasser or bare licensee. *See Bramble, supra*.

The second theory, which I designate, for purposes of this opinion and to avoid the confusion inherent in failing to precisely define the issue before us, "dog owner's liability", is dependent upon an owner's "control" of his dog. *Slack v. Villari*, 59 Md.App. 462, 476 A.2d 227 (1984). Liability arises when it is shown that either: (1) without regard to

the knowledge of the dog's viciousness, the dog owner failed to exercise the degree of control of the dog as would be exercised by a "reasonable person", or (2) "... the owner knew, or by the exercise of ordinary or reasonable care, should have known, of the propensity of the animal to do the particular mischief that was the cause of the harm." *Herbert v. Ziegler*, 216 Md. 212, 216, 139 A.2d 699 (1958). *See Twigg v. Ryland*, 62 Md. 380 (1884).

I am satisfied that, under the facts presented, liability, if it exists, must rest on a "premises liability" analysis. The dog owner's "liability" analysis has importance only with regard to assessing the quality of the premises owner's conduct toward the "bare licensee"; to the extent that reference to the standard of care imposed on the dog owner with respect to the control of his or her dog provides evidence which would enable the trier of facts to characterize that conduct with respect to the premises as willful and wanton, then, to that extent, it has relevance.

I now consider the case *sub judice* in light of *Bramble*.

In *Bramble*, the issue was whether the pleadings stated a cause of action[2] and, therefore, whether the trial court's sustaining of demurrers to the plaintiff's declaration was proper. In finding that the trial judge properly sustained the demurrers, the Court pointed out: 264 Md. at 523, 287 A.2d 265

> Once they state in their declaration that they were trespassers, albeit inadvertent, there is simply no authority in Maryland which permits their recovery unless wilful or wanton misconduct or entrapment on the part of the animal's owners can be shown. *No such allegation was made here.* (emphasis added)

After having considered, and rejected, the various theories espoused by plaintiffs "to escape from their unenviable

---

**2.** In *Bramble*, the plaintiffs alleged in their declaration that they were inadvertent trespassers on the defendants' land, that they were injured by defendants' dog while on defendants' land, and that defendants' dog had vicious propensities, of which defendants were aware.

predicament," and with particular reference to the plaintiff's argument that the defendant's dog was analoguous to a spring gun, it said:

> We need not decide to what extent any particular device may be deployed in specific circumstances before it becomes wanton or wilful misconduct or entrapment. We merely conclude that the use of a vicious watchdog to protect its owners' property does not constitute such action[,]

*Id.* at 526, 287 A.2d 265 because,

> A spring gun is more than likely to take human life. It is placed, not for the purpose of warning others off, but with the design to do them great injury, even if life is not taken should they come in contact with it. A dog is rarely so vicious or powerful that it would endanger a man's life. And the watchdog is used, not so much for the purpose of injuring an intruder, but rather as a means for warning and frightening him away. A dog gives notice of his presence and attack. A spring gun kills without any notice whatever.

*Woodbridge v. Marks,* 17 App.Div. 139, 45 N.Y.S. 156, 160 (1897).

Although *Bramble* teaches that the mere use of a vicious watchdog is not, in and of itself, willful and wanton misconduct or entrapment, *Bramble* also recognizes that a dog owner's willful and wanton misconduct may render the dog owner liable even to one wrongfully on his premises. Thus, *Bramble* should not be read as standing for the proposition that a vicious dog on private property cannot be a factor, even an important one, in a set of circumstances which, when taken together, could amount to willful and wanton misconduct or entrapment. To do so would render meaningless the Court's recognition of the standard of care owed a trespasser. Because there were no allegations in that regard, the Court simply had no occasion to focus on or discuss what additional facts and circumstances would be necessary to constitute such conduct. It is interesting to note, in that regard, however, that the tendency of a dog to

give "notice of his presence and attack" *was a significant factor* in its analysis.

The case *sub judice* differs from *Bramble* in at least two respects. First, here, the issue is the sufficiency of the evidence, rather than the sufficiency of the pleadings, an issue appellee has not, and could not, raise. Appellant, unlike the plaintiffs in *Bramble*, in addition to alleging facts supportive of strict liability and labeling appellee's conduct, "reckless", alleged facts from which willful or wanton misconduct or entrapment could have been inferred.[3] Second, the issue having been raised by the pleadings, appellant presented evidence to prove the nature and effect of appellee's conduct.

"Willful" and "wanton" conduct,

is in the nature of an intentional wrong, the tendency of which to injure is known or should be known and ordinarily is accompanied by an indifference to and disregard of the probable harmful consequences. Something more is required than mere inadvertance or lack of attention; there must be a more or less extreme departure from ordinary standards of care and the conduct must differ in quality, as well as in degree, from ordinary negligence, and must involve a conscious disregard of a known, serious danger. It is usually regarded as "willful" or "wanton" to fail to exercise ordinary care to prevent injury to a person who is actually known to be, or reasonably is expected to be, within the range of a dangerous act being done, or a hidden peril on the premises. (citations omitted)

---

**3.** Specifically she alleged:
That [appellee] was negligent in that it failed to post signs adequately warning ... of the dog's presence and failed to post signs warning [appellant] to keep out of and off of its lot, failed to have an attendant, failed to restrict the area in which the dog could roam unattended, failed to close the gates to its lot when the area in which [appellant] unknowingly entered, which danger was known or should have been known by [appellee] ...

65 C.J.S. Negligence § 63(38). *See Medina v. Meilhammer,*
62 Md.App. 239, 489 A.2d 35 (1985) (discussing punitive
damages, "willful" and "wanton" conduct is extraordinary
or outrageous conduct, amounting to a reckless disregard
of the rights of others.)

Turning to the instant case, the injuries alleged occurred
on appellee's property and appellant was, at best, a bare
licensee. It is apparent, therefore, that appellant, to sur-
vive a motion for directed verdict, must have produced
evidence from which it could be inferred that appellee's
conduct with regard to its premises, under the circumstanc-
es,[4] was willful and wanton misconduct or constituted en-
trapment. Appellant testified that appellee's property was
located in a commercial area; that it appeared to be a public
parking lot; that it was unattended; that the gates were
open; and that no signs designating the property as private
property or warning of the presence of a vicious dog were
displayed on or about the premises. In addition, her testi-
mony was such as to permit the trier of fact to conclude
that the dog was not secured and gave no warning prior to
its attack. Moreover, unlike *Slack v. Villari, supra,* ample
evidence of appellee's knowledge of its dog's "mischievous
propensities" was presented. The deposition of appellee's
Transportation Manager, which was read at trial, contained
evidence that at least four persons had been attacked or
bitten by appellee's dog. Furthermore, there was evidence
that an inter-office memorandum had been circulated by
appellee to all department heads, alerting them that the
garage had obtained a watchdog and warning them against
going near the dog for any reason. It thus is clear that
appellee had full knowledge of the dog's vicious propensi-
ties.

By themselves, the property's location, appearance, lack
of an attendant, and accessibility, though clearly relevant,

---

**4.** Appellee's knowledge and duty with respect to the control of its dog
is perhaps a major, though not the exclusive, circumstance to be
considered.

arguably may be insufficient to show willful and wanton misconduct or entrapment. But here there is much more: evidence of a vicious dog's presence, *as to which appellant remained unwarned up to the point of attack,* evidence of appellee's substantial knowledge of that dog's vicious propensities, evidence that this vicious dog was not secured, and evidence that no signs designating the property private property or giving notice of the dog's presence were displayed on the property. When the totality of the circumstances, as revealed by appellant's evidence is considered, appellee's conduct with respect to its property, especially as it relates to the dog kept thereon, takes on a different and more reckless and sinister aspect. I think that from these circumstances a jury could infer that appellee's conduct was willful and wanton or constituted entrapment. I would reverse.