## LEIKACH ET UX. *v.* ROYAL CROWN BOTTLING COMPANY OF BALTIMORE, INCORPORATED

[No. 379, September Term, 1970.]

*Decided April 14, 1971.*

The cause was argued before HAMMOND, C. J., and FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Samuel O. Jackson, Jr.,* with whom were *Max R. Israelson* and *Israelson, Pines & Jackson* on the brief, for appellants.

*Robert L. Karwacki,* with whom was *K. Donald Proctor* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

In *Joffre v. Canada Dry, Inc.,* 222 Md. 1, we affirmed the action of the trial judge in directing a verdict for the bottler and the delicatessen store owner in a suit by a claimant who had suffered a severed Achilles tendon when a soda bottle exploded near her in the store. The claimant relied on res ipsa loquitur. In agreeing with the trial judge that the claimant had not shown a greater likelihood that her injury was caused by the negligence of the defendants than by some other cause, we said (at pp. 9-10) :

> "The cases from other jurisdictions which have permitted the inference of negligence of the bottler from the exploding of a bottle most often have been those where the probability of an intervening cause of the breaking has been excluded by the testimony for the plaintiff. Where that probability is not excluded, the

courts usually rule that no liability of the bottler has been shown. For example, where the exploding bottle had been kept in a room to which only the retailer had access and due care was shown after delivery to the retailer until the moment of bursting, *res ipsa* was held applicable to the bottler in *MacPherson v. Canada Dry Ginger Ale, Inc.* (Sup. Ct. N.J.), 29 A. 2d 868. The Court distinguished *Dunn v. Hoffman Beverage Co.* (N. J.), 20 A. 2d 352, where the doctrine was held inapplicable because the plaintiff did not exclude other probable causes or show due care in handling after delivery by the bottler. We have noted earlier that the Municipal Court of Appeals for the District of Columbia made the same distinction in the cases of *Canada Dry Ginger Ale Co. v. Jochum* (D.C.) 43 A. 2d 42, and *Atwell v. Pepsi-Cola Bottling Co. of Washington* (D. C.), 152 A. 2d 196. Compare *Benkendorfer v. Garrett* (Tex. Civ. App.), 143 S.W.2d 1020, in which the exploding bottle had been at the retail store but two days and had not been moved or molested until grasped to be put in the refrigerator when it burst (recovery allowed), with *Kees v. Canada Dry Ginger Ale, Inc.* (Mo. App.), 199 S.W.2d 76, 79, in which the bottle was in the store from January 28 to March 1 and the Court, in denying recovery against the bottler, noted the bottle could have been dropped, mishandled, tampered with and cracked by employees or customers, and the jury could do no more than guess that it had not been subjected to treatment tending to bring about the explosion resulting in injury, after it left the possession of the bottler. Other cases finding a lack of proof of unchanged conditions after the bottle had left the bottler are *Hughs v. Miami Coca Cola Bottling Co.* (Fla.), 19 So. 2d 862; and *Monroe v. H. G. Hill Stores,*

*Inc.* (La.), 51 So. 2d 645. The cases are collected in an annotation in 4 A.L.R.2d 466.

"In the case before us the testimony on behalf of the plaintiff permitted only speculation as to: (1) whether the bottle exploded and fell, or fell and shattered (the plaintiff's statement at the hospital would indicate the latter); (2) whether the plaintiff or some other customer knocked or brushed the carton to the floor, causing the breaking (the plaintiff's statement that she did not touch the bottle would seem to have meant an intentional touching since her denial of brushing the carton with her coat was that she did not 'recall' so brushing it); (3) whether in the months the Canada Dry display had been in the delicatessen the bottle that shattered had or had not been mishandled or cracked by an employee of the delicatessen in working on the display, or by a customer taking off a carton, or hitting the bottle with one of the shopping carts which the testimony showed were in the store, or otherwise. We find the testimony to permit too many inferences of causes for the occurrences for which neither the bottler nor the delicatessen would be responsible to allow the invoking of the doctrine of *res ipsa loquitur* against either.

"We are not unmindful that several courts recently have taken the view that the explosion in a store of a bottle of carbonated beverage, without more, requires both the bottler and the retailer to go forward and exonerate themselves from responsibility. These are *Loch v. Confair* (Pa.), 93 A. 2d 451, and *Nichols v. Nold* (Kan.), 258 P. 2d 317. See also *Ferrell v. Royal Crown Bottling Co. of Charlestown* (W. Va.), 109 S.E.2d 489.

"We do not say that under adequate evidence for the plaintiff *res ipsa loquitur* would not ap-

ply in an exploding bottle case; we merely say that the evidence here was not adequate. We are not prepared to hold, as the three cases last cited in effect held, that the plaintiff's ignorance of, or inability to prove, facts giving rise to a reasonable inference of negligence, can compel the defendant to supply what is needed for recovery."

In the case now before us the plaintiff below and the appellant here was the owner of a small store who was struck in the eye by part of an exploded soda bottle he had bought from the bottler, the Royal Crown Bottling Company, Inc. (Royal Crown), the defendant below and the appellee here. The trial judge thought that *Joffre* required the direction of a verdict for the bottler at the close of the claimant's case. In deciding whether the verdict properly was directed, we have considered the claimant's evidence and all inferences that permissibly can be drawn from that evidence in the light most favorable to the claimant. *Short v. Wells,* 249 Md. 491, 495. We are of the view that the claimant offered sufficient evidence to permit reasonable men to conclude as jurors that the bottler, and not another, had been negligent and that this negligence resulted in harm to the claimant, and accordingly we will reverse the judgment for the bottler.

The plaintiff, Martin Leikach, and his wife came to this country from Poland. At the times here pertinent they operated a small self-service grocery store at Lexington and Amity Streets in Baltimore, approximately thirty by twenty-five feet. Their patrons in the main had small incomes and some of them tended not to let a shortage of cash prevent their having what they wanted and were, a store employee said, "light-handed." For these reasons full precautions had been taken to enable all parts of the store to be always visible from any other part and to have protection against intruders. Mr. Leikach alone had the key to the front door and to the back door, and no one else could enter the store after it was closed. Mirrors

were positioned on each of the walls. Leikach stood constantly at the cash register which was on a raised platform to give him a view of the whole store. When Leikach had to go to the back of the store, an employee took his place at the cash register. Leikach did his banking on Mondays when the store was closed, and did his bookkeeping daily at home. The two employees were trained to watch the store at all times. There were no pets in the store. There was a display stand for soda bottles located in a recess to the right of the front entrance as one entered. Leikach, whose English was not fluent, said the location was "the safest place for bottles to keep because it was in the vault." There was space for people to pass by the stand without being close to it. The meat man, Judkins, had a direct view of the bottle stand from the butcher counter behind which he worked. He too continually kept an eye on the whole store.

On May 18, 1967, an order of bottled Royal Crown soda products was delivered to the store. The bottles in the order had been inspected, filled, capped and delivered by Royal Crown. Royal Crown's employee handled the entire delivery which consisted in placing much of the order in the refrigerated unit in the store and placing the rest, in six packs, on the display stand. Customarily, the refrigerated unit was replenished by Leikach's employees from the display stand but, because Royal Crown had had a sale on, the order of May 18 was larger than usual and it had not been necessary to move any Royal Crown soda from the stand to the unit between the delivery and the explosion eight days later. Although the warm soda on the stand would have been sold, the neighborhood patrons of the store habitually bought only cold drinks, and no warm soda was sold between May 18 and the morning of the explosion eight days later. The soda products of two other companies shared the stand with those of Royal Crown but there was more of Royal Crown because it outsold the others several times to one.

None of the other companies delivered any bottles to the store between the May 18 delivery of Royal Crown

soda and the explosion. The testimony was that if any one had been near or around the Royal Crown soda on the stand it would have been unusual and have been seen and that no one, including Leikach, tampered with, disturbed or injured any bottle on the stand after May 18 and before the explosion. The bottle that exploded was one of those delivered on May 18.

On the morning of May 26, 1967 Leikach and Judkins arrived together at the store, which had been closed for at least twelve hours, to open up for the day. Leikach unlocked the front door and walked in and Judkins followed. Leikach extended his left hand up to the burglar alarm box high above the soda display stand on the wall that formed the right side of the entrance way as one passed through the door towards the store interior. He turned the key in order to neutralize the alarm system. Both he and Judkins say he did not come in contact with the bottles on the stand in any way and Judkins was not in a position to affect the bottles. Neither the heating system nor the air-conditioning system was on, since the mid-May temperature called for neither, so that there was no sudden change in temperature. As Leikach withdrew his key and turned, one of the bottles on the stand exploded and the neck of the bottle separated from the rest of the bottle and either the cap or the glass, it is not entirely clear which, struck Leikach in the eye. Both Leikach and Judkins testified that the explosion came first and then a six pack fell to the floor with one bottle in pieces and five intact. The eye later had to be removed surgically. Leikach sued Royal Crown, relying on the doctrine of res ipsa loquitur.

*Munzert v. American Stores,* 232 Md. 97, 104, sets out the three criteria necessary for successful reliance on the doctrine of res ipsa loquitur as:

1. A casualty of a sort which usually does not occur in the absence of negligence.
2. Caused by an instrumentality within the defendant's exclusive control.

3. Under circumstances indicating that the casualty did not result from the act or omission of the plaintiff.

It is apparent and conceded that the first test is satisfied and, although Royal Crown at argument said it believed that Leikach had struck the bottle in the course of turning off the alarm system, the testimony Leikach offered, if believed by the jury, would satisfy the third test. We are here concerned only with the matter of the defendant's "exclusive control" in the context of the stage setting and the actors in the drama before us.

As *Joffre* foreshadowed, the criterion of "exclusive control" in the area of exploding soda bottles is not applied literally for, if it were, there could hardly, if ever, be a recovery. As 2 *Harper and James, The Law of Torts* puts it in § 19.7, pp. 1086-1087:

> "The requirement as it is generally applied is more accurately stated as one that the evidence must afford a rational basis for concluding that the cause of the accident was probably 'such that the defendant would be responsible for any negligence [such as, in the present case, (1) defects in the bottle, (2) defects caused by improper handling of the bottle, or (3) excessive carbonation] connected with it.' That does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant's door. * * *

> "The fallacy of the 'exclusive control' test is seen in many situations where the doctrine [of res ipsa loquitur] is unhesitatingly applied despite absence of 'control.' * * * Where a fuse misfires, or a bottle explodes, the inference of negligence may still point to the manufacturer or bottler if the proof eliminates the probability of other causes, even though the mishap occurs at a time and place remote from defendant's control.

"The requirement as restated may still be a pretty serious burden in some situations. In the case of the misfiring fuse or the exploding bottle, for instance, if the article has passed through many hands the plaintiff must (by direct or circumstantial evidence) lay the basis for eliminating *each one* of them as a likely cause of the defect, before he can recover against the manufacturer."

Comment e, Section 328 D of the *Restatement (Second) of Torts* states (p. 159) :

"The plaintiff's burden of proof (see § 328 A) requires him to produce evidence which will permit the conclusion that it is more likely than not that his injuries were caused by the defendant's negligence. Where the probabilities are at best evenly divided between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof. The plaintiff need not, however, conclusively exclude all other possible explanations, and so prove his case beyond a reasonable doubt. Such proof is not required in civil actions, in contrast to criminal cases. It is enough that the facts proved reasonably permit the conclusion that negligence is the more probable explanation. This conclusion is not for the court to draw, or to refuse to draw, in any case where either conclusion is reasonable; and even though the court would not itself find negligence, it must still leave the question to the jury if reasonable men might do so."

Comment g to the same Section adds (p. 161) :

"The plaintiff may sustain this burden of proof [by] * * * a showing that the defendant is responsible for all reasonably probable causes to which the event can be attributed. Usually this is done by showing that a specific instru-

mentality which has caused the event, or all reasonably probable causes, were under the exclusive control of the defendant. Thus the responsibility of the defendant is proved by eliminating that of any other person.

"It is not, however, necessary to the inference that the defendant have such exclusive control; and exclusive control is merely one way of proving his responsibility. * * * It may be enough that the defendant was formerly in control, at the time of the probable negligence, as in the case of a beverage bottler whose product poisons the consumer, when there is sufficient evidence to eliminate the responsibility of intermediate dealers."

See also Illustration 10 on p. 162 of the Restatement and Prosser, *The Law of Torts*, § 39, pp. 222-225 (3rd ed.).

We are impressed with the reasoning and holding in *Evangelio v. Metropolitan Bottling Co.*, 158 N.E.2d 342, in which the Supreme Judicial Court of Massachusetts retreated from earlier holdings in favor of the bottler and held that the burden of a plaintiff who relies on res ipsa loquitur in an exploding bottle case does not include the exclusion of every possible cause of injury other than that of the bottler's negligence, but does include the proving that there is a greater likelihood that injury was caused by the defendant's negligence than by some other cause, as well as with similar reasoning and holding in *Zarling v. La Salle Coca Cola Bottling Co.* (Wis.), 87 N.W.2d 263.

We think that here the appellant met his burden of showing the greater likelihood that Royal Crown had been negligent and the jury should have been permitted to pass on the issue.

*Judgment reversed, with costs, and case remanded for a new trial.*