## WILLIAM C. GLEASON ET UX. *v.* JACK ALAN ENTERPRISES, INC.

[No. 1191, September Term, 1976.]

*Decided June 15, 1977.*

The cause was argued before GILBERT, C. J., and MASON and LISS, JJ.

*Matthew J. Kastantin* for appellants.

*Edward B. Layne, Jr.,* with whom were *McInerney, Layne, McCormick, Sullivan & Rice* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

This case is an example of "a riddle wrapped in a mystery inside an enigma." [1] It arises out of an automobile accident, involving a delivery truck and a pedestrian, which occurred on June 9, 1975 in Silver Spring, Maryland, at the intersection of Fenton Street and Ellsworth Drive. William C. Gleason,[2] the appellant, was on that date on a shopping trip to the area and was standing on the southeast corner of the intersection some four feet back from the curb waiting for the light to change so that he could cross the street, when he was struck by a driverless 1969 Chevrolet van truck owned by the appellee, Jack Alan Enterprises, Inc. Appellant claims damages for personal injuries resulting from the accident.

The evidence submitted by the appellant established that prior to striking the appellant the appellee's truck had been parked by one of its employees on an incline at the curb

---

1. The entire quotation is — "I cannot forecast to you the action of Russia. It is a riddle wrapped in a mystery inside an enigma." Sir Winston Churchill radio broadcast [October 1, 1939].

2. The appellant's wife is also one of the appellants because of her claim for loss of consortium. We shall treat the case as if it were the sole appeal of William C. Gleason as the disposition of his appeal will also be dispositive of the wife's legal position.

facing northbound on Fenton Street at a distance of between 400 to 500 feet from the intersection. At the time the collision occurred the employee who had parked the truck was examining the floors in an office building on Fenton Street where he was about to install carpeting. The back doors of the truck were partially opened and tied together to a roll of carpeting protruding from the doors.

The police officer who investigated the accident testified that his investigation at the scene revealed that the truck had rolled backwards down the hill on Fenton Street, jumped the curb where the appellant was standing, struck the appellant and a pole, and finally stopped facing northbound in the intersection blocking traffic. The only damage to the body of the truck was to its rear end where it struck the pole. Upon checking the emergency brake, the officer found it to be fully engaged and "jammed" so that it could not be moved in either direction. The employee who had parked the truck identified himself at the scene and told the officer that he had engaged the emergency brake when parking the vehicle. The officer had no recollection as to whether his investigation disclosed that the wheels of the truck were turned into the curb nor whether the truck was left in gear when it was parked. The keys were not in the ignition. The officer did not know how long prior to the accident the truck had been parked at the curb as he did not inquire into the matter and the information was not volunteered. There was no complaint or suggestion by the appellee's driver that the truck had been struck by any other vehicle or that anyone had tampered with the vehicle prior to the accident.

The only witnesses offered by the appellant were himself and the police officer. At the close of the appellant's case the appellee moved for a directed verdict. The trial court granted the motion on the ground that the appellant had relied on the legal proposition that the accident was controlled by the doctrine of *res ipsa loquitur* and that the appellant had failed to establish that the instrumentality causing the injury was within the exclusive control of the defendant. The court directed the clerk to enter a verdict for

the defendant pursuant to Rule 552 a. It is from that judgment that this appeal is taken.

The sole issue to be determined is whether the trial court erred in granting appellee's motion for a directed verdict at the conclusion of the appellant's case.

In ruling on a motion for a directed verdict, the trial court was required to consider all of the evidence in a light most favorable to the appellant together with all reasonable and legitimate inferences which could have been deduced therefrom. The appellee was not entitled to a directed verdict in its favor unless the facts and circumstances were such as to permit only one inference with regard to the issue presented. *Smack v. Johnson*, 238 Md. 35, 207 A. 2d 511 (1965). If there was legally relevant and competent evidence, however slight, from which a rational mind could infer a fact in issue, then the lower court invaded the province of the jury by granting the directed verdict. *Baulsir v. Sugar*, 266 Md. 390, 293 A. 2d 253 (1972); *Katz v. Holsinger*, 264 Md. 307, 286 A. 2d 115 (1972); *Plitt v. Greenberg*, 242 Md. 359, 219 A. 2d 237 (1966); *Keene v. Arlan's Dept. Store*, 35 Md. App. 250, 370 A. 2d 124 (1977).

The appellant being unable to establish the cause responsible for the unattended truck's rolling down the incline elected to rely on the doctrine of *res ipsa loquitur*. The characteristics of *res ipsa loquitur* and the reason for the rule were cited by the Court of Appeals in *Potts v. Armour & Co.*, 183 Md. 483, 39 A. 2d 552 (1944):

"Res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict.

> The justice of the rule permitting proof of negligence by circumstantial evidence is found in the circumstance that the principal evidence of the true cause of the accident is accessible to the defendant, but inaccessible to the victim of the accident. The rule is not applied by the courts except where the facts and the demands of justice make its application essential, depending upon the facts and circumstances in each particular case."

In order to invoke the doctrine three concurring circumstances must be shown by the evidence: (1) it must appear that the accident was of such a nature that it would not ordinarily occur without the defendant's negligence; (2) the plaintiff must demonstrate that the apparatus or instrument which caused the injury was in the defendant's exclusive control; and (3) that no action on the part of the plaintiff or a third party or other intervening force might just as well have caused the injury. *Blankenship v. Wagner*, 261 Md. 37, 273 A. 2d 412 (1971); *Leikach v. Royal Crown*, 261 Md. 541, 276 A. 2d 81 (1971).

The trial court reached the conclusion that the appellant had offered sufficient evidence to generate a jury question as to the propositions stated in the first and third criteria above stated. No contention to the contrary has been made by the appellee in this appeal.

The trial judge, however, concluded that the appellant had failed to offer sufficient evidence to require the case to be submitted to the jury because of a lack of proof that the instrumentality causing the injury was within the exclusive control of the appellee. He reached that conclusion on the ground that the evidence:

> "in no way establishes when the truck was parked on Fenton Street or how long it remained unattended before it slipped backwards down Fenton Street to the intersection of Ellsworth Drive; and this is not a case of evaluating whether a time interval of ten minutes or two minutes or any other space of time establishes lack of exclusive

control. There is simply a complete lack of evidence on the point."

2 Harper and James, *The Law of Torts* § 19.7 (1956), in discussing the principle of "exclusive control" says:

"The requirement as it is generally applied is more accurately stated as one that the evidence must afford a rational basis for concluding that the cause of the accident was probably such that the defendant would be responsible for any negligence connected with it. That does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at the defendant's door."

Comment e, § 328D of the *Restatement (Second) of Torts,* as quoted in *Leikach v. Royal Crown, supra,* at 549-50, 276 A. 2d at 85, states:

"The plaintiff's burden of proof (see § 328 A) requires him to produce evidence which will permit the conclusion that it is more likely than not that his injuries were caused by the defendant's negligence. Where the probabilities are at best evenly divided between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof. The plaintiff need not, however, conclusively exclude all other possible explanations, and so prove his case beyond a reasonable doubt. Such proof is not required in civil actions, in contrast to criminal cases. It is enough that the facts proved reasonably permit the conclusion that negligence is the more probable explanation. This conclusion is not for the court to draw, or to refuse to draw, in any case where either conclusion is reasonable; and even though the court would not itself find negligence, it must still leave the question to the jury if reasonable men might do so."

Comment g to the same Section adds:

"The plaintiff may sustain this burden of proof [by] * * * a · showing that the defendant is responsible for all reasonably probable causes to which the event can be attributed. Usually this is done by showing that a specific instrumentality which has caused the event, or all reasonably probable causes, were under the exclusive control of the defendant. Thus the responsibility of the defendant is proved by eliminating that of any other person.

It is not, however, necessary to the inference that the defendant have such exclusive control; and exclusive control is merely one way of proving his responsibility."

The appellee urges that the case of *Johnson v. Jackson*, 245 Md. 589, 226 A. 2d 883 (1966), is dispositive of this case. It calls our attention to the comments of Judge Finan, speaking for the Court of Appeals:

"To paraphrase the comments of the trial judge, he thought that ·in viewing all of the evidence produced by the appellant, it was unreasonable to assume that the parked vehicle, after having remained stationary on an incline for a period of from five to ten minutes, would not of its own accord have drifted downhill, unless an independent act of some third party had intervened, starting it in motion.

His comments also are pregnant with the thought that since the vehicle had remained stationary on the incline from five to ten minutes, there was no reasonable inference to be drawn from the facts indicating that the appellee Billie Jackson had been negligent in the manner in which she parked the vehicle.

. . .

The annotation in 16 A.L.R.2d. 979 titled 'Liability for injury or damage caused by the acci-

dental starting up of parked motor vehicle' § 6 subtitled 'Time elapsing between parking and starting up' enumerates examples covering the gamut of possibilities, commencing with the situation where the vehicle starts moving almost immediately after it is parked to an interval of several hours. Without elaborating in detail on the examples cited therein, it suffices to say that the length of time which the defendant's parked car remains in place before starting has been held to be a significant factor in determining whether or not defendant was negligent in parking the vehicle." *Id.* at 593-94, 226 A. 2d at 885.

*Johnson v. Jackson* is distinguishable, however, from the case sub judice. In that case the appellant was the only witness produced at trial although the plaintiff had listed six eyewitnesses in response to appellee's request for answers to interrogatories. In his own testimony the appellant stated that he heard someone "holler, 'Daddy' just as I was hit." That testimony was indicative of the fact that within the knowledge of the appellant, someone other than the appellant was present at or near the scene of the accident when it occurred. As a trial tactic, the appellant chose not to introduce evidence which was available to him. The Court held that under those circumstances it could not find the rationale for application of the *res ipsa loquitur* doctrine had been met, i.e., that the facts surrounding the accident were more within the knowledge of the defendant than within the knowledge of the plaintiff. In *Johnson*, the Court held that, under the facts and circumstances as they existed, the case fell within the rule "that the doctrine will not apply when it appears that the injury may have been caused by the independent act of a third person or intervening cause. '. . . in such a situation the plaintiff is not permitted to recover until he excludes the independent neglect of the third party as the efficient and proximate cause of the injury.' " *Id.* at 593, 226 A. 2d at 885. *State for*

*Use of Parr v. Board of County Commissioners of Prince George's County*, 207 Md. 91, 113 A. 2d 397 (1955); *Coastal Tank Lines v. Carroll*, 205 Md. 137, 106 A. 2d 98 (1954); *Frenkil v. Johnson*, 175 Md. 592, 3 A. 2d 479 (1939).

In the instant case, in reaching his decision to withdraw the case from the jury the trial judge relied principally upon what he saw to be a failure of the appellant to establish how and when the truck was parked at the curb and concluded therefrom that the appellant had failed to establish that the vehicle was in the exclusive control of the appellee immediately prior to the occurrence of the accident. However, the failure to establish these facts are significant only to the extent that they make it more probable that an intervening cause rather than the negligence of the appellee was responsible for the occurrence of the accident. So far as the manner of parking the vehicle was concerned, it is obvious that access to that information should have been more available to the appellee than to the appellant. The appellant did in fact attempt to discover the identity of the company's driver, but an interrogatory asking for "the name, address and position of the individual who parked the vehicle in question prior to the accident . . . " was answered by the appellee with the statement, "Robert L. Shaw, moved, address unknown." Neither appellant nor appellee issued a summons for the driver to appear at the trial and we think it is a fair inference that the appellant was not able to locate the driver. It would be an unreasonable burden on the appellant to require that he produce the witness where the latter's employer no longer knew his whereabouts. Absent the driver, the appellant was unable to establish how long the truck had been parked, but the answers to interrogatories did establish that it was parked outside an office building and that the driver who parked the truck was in the building inspecting the floors where carpet was to be installed. The officer's testimony was that the truck doors were partially open and tied together to a roll of carpeting protruding from the doors. From these facts the jury could have reasonably inferred that the truck had been parked for only a relatively short period of time; and if the jury

believed the officer's testimony, it could have found that the absence of any damage to the truck other than that to the rear where it struck the pole effectively ruled out the possibility of a collision with another vehicle. There was no evidence that anyone had tampered with the vehicle after it was parked at the curb.

The most recent annotation of the cases discussing the factual situation in this case is found in 55 A.L.R.3d 1260 where an analysis is found of the "presumption of negligence and application of the *res ipsa loquitur* doctrine in action for injury and damage caused by accidental starting up of parked vehicle." Section 6 of the annotation includes a compilation of those cases in which the lapse of time between the parking of the unattended vehicle and the breaking loose of the vehicle was one of the circumstances considered in deciding whether or not to permit an inference of negligence from the happening of the accident. The expiration of a short interval of time between the parking of a vehicle and its moving, unattended, to become involved in an accident has been held to be one of the factors which could give rise to an inference of negligence.

So, in *Knippenberg v. Windemuth*, 249 Md. 159, 238 A. 2d 915 (1958), *res ipsa loquitur* was held to be applicable where the evidence was that the defendant motorist had parked his vehicle on a relatively steep grade and within ten to fifteen seconds heard the thump of the vehicle against a house at the bottom of the incline. This holding was reached notwithstanding testimony of the motorist that he had parked his car with its wheels against the curb and had manually set the hand brake.

Conversely, in situations where the interval elapsed between parking and starting up was of a long duration, thereby increasing the likelihood of an intervening cause, that factor has been held to be *one element against a conclusion of negligence. Roberts v. Ray*, 45 Tenn. App. 280, 322 S.W.2d 435 (1959).

In *Gresser v. Taylor*, 276 Minn. 440, 150 N.W.2d 869 (1967), it was held that a lapse of three hours between the time that the operator parked a motor vehicle on a hill and

the time that it collided with a person at the foot of the hill was one factor to be considered by the jury — but not sufficient ground to grant a directed verdict.

*See also Price v. McDonald,* 7 Cal. App.2d 77, 45 P. 2d 425 (1935), where evidence that an automobile was parked in defendant's driveway some five or six hours before it rolled down and struck the plaintiff did not preclude the application of the doctrine of *res ipsa loquitur,* it being incumbent upon the person having control of the car to explain the cause of its movement.

The same conclusion was reached in *Bobbitt v. Salamander,* 240 Mo. App. 902, 221 S.W.2d 971 (1949), where the lapse of time from the original parking of the vehicle to the time of the accident was eleven hours, and *Hill v. Thompson,* 484 P. 2d 513, 55 A.L.R.3d 1254 (Okla. 1971), where it was four or more hours before the vehicle moved from its parked position.

It seems clear to us that the lapse of time between the parking of the vehicle and its unattended motion from its parked position is only one of many factual considerations which a jury may consider in determining whether the vehicle at the time of the occurrence was in the exclusive control of the defendant. The trial court, by its ruling, imposed on the appellant the obligation to produce testimony to establish the manner in which the vehicle had been parked and the time which it had remained parked before it struck the appellant. We have found no case which imposes such a burden on the injured party nor have counsel cited any such authority to us. Where, as in this case, that information is peculiarly within the knowledge of the appellee or its employees, and, therefore, much more readily ascertainable by the appellee than by the appellant, the imposition of the burden suggested by the trial court would in effect emasculate the legal significance of *res ipsa loquitur* and require the appellant to surrender the favorable inference which arises in those cases where the doctrine applies.

The great Roman orator stated the proposition to be "*Res loquitur ipsa, judices, quae semper valet plurinum.*" [3] — Judges, the case speaks for itself, that which there is no more powerful advocacy.

If we may be forgiven, the vernacular which we think the proverbial man on the street might well use to express our ruling is as follows:

By Golly, if I'm standing on the corner minding my own business and a truck which is parked some 500 feet away comes barreling down the hill without anybody driving and knocks me tail over tincups, the owner better be prepared to explain how it happened.

> *Judgments reversed; remanded for new trial.*
> *Costs to be paid by appellee.*

---

**3.** Cicero, Pro Milone, XX.